# LAPPIN *v.* DISTRICT OF COLUMBIA.*

CONSTITUTIONAL LAW; LICENSE TAXES; BROKERS.

1. While the 14th Amendment of the Constitution, declaring that no State shall deny to any person within its jurisdiction the equal protection of the laws, does not purport to extend to authority exercised by the United States (following *Moses* v. *United States,* 16 App. D. C. 428, 50 L. R. A. 532), Congress in legislating for this District may not deny its residents such protection, but all of the constitutional guaranties of life, liberty, and property are equally for the benefit of citizens of the United States residing permanently or temporarily in this District, as of those residing in the several States (following *United States ex rel. Kerr* v. *Ross,* 5 App. D. C. 241; *Curry* v. *District of Columbia,* 14 App. D. C. 423, and *Stoutenburgh* v. *Frazier,* 16 App. D. C. 229, 48 L. R. A. 220).

2. The right to pursue any legitimate trade, calling, or profession, subject only to such reasonable regulations in the interest of the public welfare as may be imposed upon all persons under like conditions, cannot be

---

*\*License Taxes.*—See also the following editorial notes presenting the authorities on their respective subjects: Discrimination between residents of city and other residents of State, note to *Sayre* v. *Phillips,* 16 L. R. A. 49; limit of amount of license fees, note to *State ex rel. Toi* v. *French,* 30 L. R. A. 415.

*Equal Protection of Laws.*—For an exhaustive presentation of the authorities passing upon various phases of the subject of equal protection of the laws, including the right to follow any particular profession, see editorial note to *Louisville Safety Vault & T. Co.* v. *Louisville & N. R. Co.* 14 L. R. A. 579. See also editorial note to *Gastineau* v. *Com.* 49 L. R. A. 111, presenting the authorities as to the constitutionality of discrimination against women in police regulations.

arbitrarily taken away from them any more than their real or personal property can be thus taken.

3. Under the first proviso of par. 15, § 6 of the act of Congress of July 1, 1902, which, after imposing a license tax of $250 on general brokers, provides that the Washington Stock Exchange shall pay $500 per annum in lieu of tax on members thereof for business done on such exchange, a member of the exchange who confines himself exclusively to business thereon is not a general broker and is not, therefore, required to pay a license tax.

4. The second proviso of par. 15, § 6 of the act of Congress of July 1, 1902, which, after imposing a license tax of $250 on general brokers, first provides that the Washington Stock Exchange shall pay $500 per annum in lieu of tax on members thereof for business done on the exchange, and then provides that any broker who is a member of a regular exchange located outside of the District of Columbia and transacting a brokerage business therein shall pay a license tax of only $100 per annum, is an arbitrary discrimination in favor of members of foreign exchanges, and imposes an unreasonable burden upon the right of a citizen to pursue a lawful occupation open to his competitors upon less onerous terms, and is void; Chief Justice ALVEY, *dissenting.*

No. 1276.   Submitted April 14, 1903.   Decided May 5, 1903.

IN ERROR to the Police Court of the District of Columbia.

*Reversed.*

The COURT in the opinion stated the case as follows:

The plaintiff in error, Robinson Lappin, was convicted in the police court of the District upon an information charging him with engaging in the business of a general broker without having first paid the license tax imposed by the act of Congress approved July 1, 1902 [23 Stat. at L. 621, p. 1352], and has been granted a writ of error.

The tax which the plaintiff in error failed to pay is provided for in par. 15, § 6, of the act aforesaid, which reads as follows:

"Par. 15. General brokers shall pay a tax of $250 per annum. Every person, firm, company, or association not incorporated (except insurance and real-estate brokers acting as such) that solicits business from the general public by advertisement or otherwise, and that purchases, sells, or negotiates for others se-

curities, shares, stocks, bonds, exchange, bullion, coin, money, bank notes, or promissory notes, or that deals in futures on market quotations of prices or values on merchandise, shares, stocks, bonds, or other securities, or accepts margins on prices or values of said shares, stocks, bonds, merchandise, or securities, shall be deemed a general broker:   *Provided,* that the Washington Stock Exchange, through its president or treasurer, shall pay to the collector of taxes of the District of Columbia a sum equal to $500 per annum in lieu of tax on the members thereof for business done on said exchange; *Provided further,* that any broker who is a member of a regularly organized stock exchange located outside of the District of Columbia, and transacting a brokerage business therein, shall pay a sum equal to $100 per annum to the collector of taxes of the District of Columbia:   *And be it further provided,* that if any person or firm shall have paid the tax in this section provided for banks and bankers, such person or firm shall not again be taxed as a broker or brokers."

A demurrer to the information having been overruled, the defendant pleaded not guilty, and the case was submitted to the court upon the following agreed statement of facts:

"The defendant, Robinson Lappin, was some time prior to the 1st day of July, A. D. 1902, and from said 1st day of July down to the time of the filing of the information herein, and since the filing thereof to the date hereof, was and still is engaged at his place of business on the corner of Seventh and F streets northwest, in the city of Washington, District of Columbia, in conducting the business of a general broker, in that he solicited business from the general public by advertisement and otherwise to purchase, sell, and negotiate for it securities, shares, stocks, and bonds, and dealt in futures on market quotations on prices or values on merchandise, shares, stocks, and bonds and other securities, and accepted margins on prices or values of said shares, stocks, bonds, merchandise, and securities.   The said defendant is not a member of a regularly organized stock exchange located outside of the District of Columbia, and has not been such a member at any time since said 1st day of July.   Subsequent to said 1st day of July demand was made upon said de-

fendant by the assessor of the District of Columbia for the payment of a tax of $250 for a license to conduct his said business as a general broker in said District for one year from and after the 1st day of July, A. D. 1902, which the said defendant refused to pay, and the said assessor refused to issue said license without said payment of $250.

"That Allison C. Jenkins and Elmer E. Simpson, trading and doing business as general brokers at No. 1229 F street northwest, in said city and District, under the firm name and style of Jenkins & Simpson, on the 15th day of September, A. D. 1902, paid the collector of taxes of the District of Columbia $100, and were granted a license by the assessor of said District to conduct the business of general brokers in said District for one year from the 1st day of July A. D. 1902. The business of the said Jenkins & Simpson was and is the same in all respects as that above described as conducted by the defendant, Robinson Lappin, the said Jenkins & Simpson being, however, at the time of the issuance to them of their said license, members of a regularly organized stock exchange outside of the District of Columbia, to wit, the Denver Stock Exchange of the city of Denver, State of Colorado.

"Counsel for the District of Columbia objecting to the relevancy and materiality of the facts set forth in the last preceding paragraph."

*Messrs. Thompson & Laskey* for the plaintiff in error:

1. There is no distinction of class made by the act of July 1, 1902, and the tax must therefore be uniform. *Curry* v. *District of Columbia,* 14 App. D. C. 441; *Railway* v. *Ellis,* 165 U. S. 150; *Cotting* v. *Stock Yards Co.* 183 U. S. 79; *Yot Sang,* 75 Fed. 983; *Yick Wo* v. *Hopkins,* 118 U. S. 356; *State* v. *Hinman,* 65 N. H. 103; *State* v. *Pennoyer,* 65 N. H. 113; *Fechheimer* v. *Louisville,* 84 Ky. 306, 21 Am. & Eng. Enc. Law, 2d ed. p. 804, and cases cited. See also *State* v. *Moore* (N. C.) 22 L. R. A. 472; *Stale* v. *Schoenig,* 72 Minn. 528; *State* v. *Ashbrook,* 154 Mo. 375; *Stale* v. *Endom,* 23 La. Ann. 663; *New Orleans* v. *Insurance Co.* 23 La. Ann. 449; *St. Louis* v. *Speigel,*

75 Mo. 145; *Com.* v. *Snyder,* 182 Pa. 630; *State* v. *Morgan,* 50
N. J. L. 389; Judson, Tan. 1903, pp. 561, 595, 599.

2. Even assuming that the act of Congress approved July 1,
1902, attempts a division, into different classes, of the general
broker and the broker who is a member of some regularly or-
ganized stock exchange outside of the District of Columbia, yet
such classification here attempted makes a distinction between
persons engaged in the same business and under the same con-
ditions, and is not only arbitrary, but unreasonable and unjust,
and violates the equality clause of the 14th Amendment to the
Federal Constitution. *Cotting* v. *Kansas City Stock Yards,* 183
U. S. 79; *R. Co.* v. *Ellis,* 165 U. S. 159; *State* v. *Ashbrook,* 154
Mo. 376.

*Mr. Andrew B. Duvall, Corporation Counsel,* and *Mr. E. H.
Thomas, Assistant,* for the defendant in error:

1. There is a distinction of class between a general broker as
defined in the act of Congress of July 1, 1902, and a broker who
is a member of a regular stock exchange. A state may classify
property for the purpose of taxation. *Connolly* v. *Union Sewer
Pipe Co.* 184 U. S. 563.

2. Congress has exclusive legislation over the District of
Columbia. *Capital Traction Co.* v. *Hof,* 174 U. S.
5; *Mattingly* v. *District of Columbia,* 97 U. S. 687. Congress
has the power to discriminate in taxation in the District of Co-
lumbia. It may exempt all property employed for manufac-
turing purposes (*Welch* v. *Cook,* 97 U. S. 541) and church prop-
erty, and "may, at its discretion, exempt certain classes of prop-
erty from taxation, or may tax them at a lower rate." *Gibbons*
v. *District of Columbia,* 116 U. S. 404. The power of Congress
to legislate for the District of Columbia includes the power to
provide for the assessment on abutting lands and lands bene-
fited, arbitrarily, one half or more of the damage for and in re-
spect of land condemned for the opening of the streets. Such
power is to be referred, not to the right of eminent domain, but
to the right of taxation. *Wight* v. *Davidson,* 181 U. S. 371, and

cases cited. The law reports in this jurisdiction contain instances (*Justh* v. *Holliday,* 2 Mackey, 346; *Tully* v. *Morgan,* 21 D. C. 88) of the evils of gambling on margins through alleged stock brokers. *Gurley* v. *MacLennan,* 17 App. D. C. 182.

3. It is not claimed in this case, and it nowhere appears from the agreed statement of facts, that the plaintiff in error was connected in any way with any stock exchange. It is not necessary to claim that he is one of that class so well known in this District, conducting what is commonly known as a "bucket shop," wherein all of the parties gamble on the rise and fall of stocks by means of quotations furnished by a detached wire unconnected with any stock exchange or any member of a stock exchange.

It is sufficient, we submit, to know. that such places existed in the District of Columbia when the act in question was passed, and now exist therein. Besides, a member of the Washington Stock Exchange or other regularly organized stock exchange, it is fair to presume, has some financial standing, and is amenable to discipline for violation of its rules, or expulsion for grave business delinquencies. Surely a membership of a regularly organized stock exchange is of itself a reasonable distinction above "curbstone" and "bucket shop" brokerage. Regulation of the latter business can be justified and distinguished on grounds of public policy, and is within the police power. The purpose to protect the community is sufficient justification. *Fulton* v. *District of Columbia,* 2 App. D. C. 431–436.

4. The imposition of a tax of $250 per annum on general brokers who are not members of a regularly organized stock exchange, and of $100 per annum on brokers who are members of such an exchange, constitutes a reasonable classification for purposes of taxation. *Curry* v. *District of Columbia,* 14 App. D. C. 423, and *Hazel* v. *District of Columbia,* 16 App D. C. 283, do not involve the authority of Congress under the 14th Amendment; but, if they do, the latter case is authority to show that a distinction is not arbitrary or unjust which divides the same business into two classes; the one respecting the cab service of a railroad corporation, and the other respecting the same service by indi-

viduals engaged in the same business. The 14th Amendment was not intended to compel the State to adopt an iron rule of equal taxation (*Bell's Gap R. Co.* v. *Pennsylvania,* 134 U. S. 233), or "cast-iron rule" (*Florida C. & P. R. Co.* v. *Reynolds,* 183 U. S. 471). Thus, it is the right of the States to exempt certain corporations (*Merchants' & M. Nat. Bank* v. *Pennsylvania,* 167 U. S. 461), to tax inheritances in accordance with the degrees of relationship (*Magoun* v. *Illinois Trust & Sav. Co.* 170 U. S. 283), to tax business in accordance with the amount thereof (*Clark* v. *Titusville,* 184 U. S. 329), and to restrict the locality in which a business may be conducted (*Barbier* v. *Connolly,* 113 U. S. 27). Requiring a license for elevators and warehouses on a railroad right of way or depot does not deny to the proprietors the equal protection of the laws because a license is not required for elevators and warehouses differently located, public policy being a sufficient justification. *Cargill Co.* v. *State,* 180 U. S. 452. See also *Capital City Dairy Co.* v. *State,* 183 U. S. 238; *Missouri* v. *Lewis,* 101 U. S. 22; *Brown* v. *New Jersey,* 175 U. S. 177. That a distinction respecting personal character and qualifications for business would not infringe the constitutional requirement was recognized in *Yick Wo* v. *Hopkins,* 118 U. S. 356. See also *American Sugar Ref. Co.* v. *Louisiana,* 179 U. S. 89; *Williams* v. *Fears,* 179 U. S. 270; *People* v. *Roberts,* 171 U. S. 658; *Merchants' & M. Nat. Bank* v. *Pennsylvania,* 167 U. S. 463; *Cotting* v. *Kansas City Stock Yards,* 183 U. S. 79, was a case not at all concerned with the subject of taxation. There the act of the State of Kansas regulating charges in public stock yards applied only to the defendant corporation, and to no other companies or corporations engaged in like business, and therefore has no application to the present case. The difficulty in drawing the line between reasonable and unreasonable classification is illustrated by two cases, neither of which arose under any taxing law, but both were occasioned by a dispute about taxable costs. The first case mentioned is that of *R. Co.* v. *Ellis,* 165 U. S. 159. In so far as these cases may be applicable to the present discussion, the latter case (*Atchison, T. & S. F. R. Co.* v. *Matthews,* 174 U. S. 96), is favorable to our contention.

5. The 14th Amendment to the Federal Constitution is not applicable. The Supreme Court of the United States has held that the jurisdiction of Congress in matters of taxation in the District of Columbia is not controlled by the provisions of this amendment. *Wight* v. *Davidson,* 181 U. S. 384. The first ten Amendments to the Federal Constitution contain no restrictions on the powers of the State, but were intended to operate solely on the Federal government. *Brown* v. *New Jersey,* 175 U. S. 172 ; *Slaughter House Cases,* 16 Wall. 36. Prior to 1868 there was no guaranty in the Federal Constitution of the equal protection of the laws as against state action. The provisions of the 14th Amendment are addressed in its prohibitions to the States. Unless, therefore, as it seems to us, the District of Columbia, for the purpose of taxation by Congress, can be considered to be a State, the statute here questioned is not unconstitutional. The District of Columbia has been held to be a State for some purposes, but for other purposes it has been declared not to be a State. Two of the illustrations are found in the following cases : According to the definitions of writers on general law, the District of Columbia, being a separate political community, is a State. *De Geofroy* v. *Riggs,* 133 U. S. 258. But the District of Columbia is not a State within the meaning of the provision giving courts of the United States cognizance of controversies between citizens of different States. *Hooe* v. *Jamisson,* 166 U. S. 395.

Mr. Justice Shepard delivered the opinion of the Court:

In the several assignments of error the constitutionality of the act imposing the tax in question is assailed on the broad ground that it makes an arbitrary and unjust discrimination between persons pursuing the same calling under substantially the same conditions. If this contention be sound, the judgment must be reversed.

It must be conceded that the 14th Amendment, which expressly declares that no State shall deny to any person within its jurisdiction the equal protection of the laws, does not purport to extend to authority exercised by the United States. *David-*

*son* v. *Wight,* 181 U. S. 371, 384, 45 L. ed. 900, 906, 21 Sup. Ct. Rep. 616; *Moses* v. *United States,* 16 App. D. C. 428, 439, 50 L. R. A. 532. But it does not follow that Congress in exercising its power of legislation within and for the District of Columbia may, therefore, deny to persons residing therein the equal protection of the laws.

All of the guaranties of the Constitution respecting life, liberty, and property are equally for the benefit and protection of all citizens of the United States residing permanently or temporarily within the District of Columbia, as of those residing in the several States. *Callan* v. *Wilson,* 127 U. S. 540, 32 L. ed. 223, 8 Sup. Ct. Rep. 1301; *United States ex rel. Kerr* v. *Ross,* 5 App. D. C. 241, 247; *Curry* v. *District of Columbia,* 14 App. D. C. 423, 439.

"That no person shall be deprived of life, liberty, or property is an ancient principle of limited government. As has been said by Chief Justice Waite: 'It is found in Magna Charta, and, in substance, if not in form, in nearly or quite all the constitutions that have been from time to time adopted by the several States of the Union. By the 5th Amendment it was introduced into the Constitution of the United States as a limitation upon the powers of the national government, and by the 14th as a guaranty against any encroachment upon an acknowledged right of citizenship by the legislatures of the States.' *Munn* v. *Illinois,* 94 U. S. 113, 123, 24 L. ed. 77, 83." *Moses* v. *United States,* 16 App. D. C. 428, 434, 50 L. R. A. 535.

In a recent case in this court involving the regulation of a calling that was made under authority of an act of Congress, and which was declared void by reason of unjust discrimination, it was said by Mr. Justice Morris, who delivered the opinion of the court: "All the general limitations imposed by the Constitution upon its [Congress] authority are as applicable in the District of Columbia as in any other part of the United States. And not only are these express limitations applicable, but, in the language of Mr. Justice Miller, in the case just cited [*Citizens' Sav. & L. Asso.* v.

*Topeka,* 20 Wall. 655, 22 L. ed. 455] all the 'implied limitations which grow out of the nature of all free governments' are equally applicable. . The 'exclusive' power of legislation over this District, which is vested in Congress by the Constitution, must be assumed to extend only to all lawful subjects of legislation; and invasions of those fundamental individual rights which lie at the foundation of the social compact, and for the maintenance of which free governments exist, are not lawful subjects of legislation." *Curry* v. *District of Columbia,* 14 App. D. C. 423, 439. See also *Stoulenburgh* v. *Frazier,* 16 App. D. C. 229, 240, 48 L. R. A. 220.

The foregoing cases illustrate the application of the principle forcefully stated by Mr. Justice Matthews in *Yick Wo* v. *Hopkins,* 118 U. S. 356, 369, 30 L. ed. 220, 226, 6 Sup. Ct. Rep. 1064, in the following words:

"When we consider the nature and the theory of our institutions of government, the principles upon which they are supposed to rest, and review the history of their development, we are constrained to conclude that they do not mean to leave room for the play and action of purely personal and arbitrary power." *Gulf, C. & S. F. R. Co.* v. *Ellis,* 165 U. S. 150, 159, 41 L. ed. 666, 670, 17 Sup. Ct. Rep. 258.

The undoubted right to pursue any legitimate trade, calling, or profession, subject only to such reasonable regulations in the interest of the public welfare as may be imposed upon all persons under like conditions, "may, in many respects, be considered as a distinguishing feature of our republican institutions." *Dent* v. *West Virginia,* 129 U. S. 114, 122, 32 L. ed. 623, 626, 9 Sup. Ct. Rep. 231. And as was said in that case: "The interest, or, as it is sometimes termed, the estate acquired in them, that is, the right to continue their prosecution, is often of great value to the possessors, and cannot arbitrarily be taken from them any more than their real and personal property can be thus taken." See also *Butchers' Union S. H. & L. S. L. Co.* v. *Crescent City L. S. L. & S. H. Co.* 111 U. S. 757, 28 L. ed. 591, 4 Sup. Ct. Rep. 652; *Curry* v. *District of Columbia,* 14 App. D. C. 423, 441.

If, then, the direct prohibition of one person or class of persons from engaging in a calling that is open to others similarly situated is clearly beyond the legislative power, it must follow that the same purpose cannot be indirectly accomplished through arbitrary taxation imposing upon one a burden greater than that to be borne by the others. As was said in *Curry* v. *District of Columbia,* 14 App. D. C. 423, 441: "If discrimination is allowable, prohibition is allowable; and both are equally obnoxious to our free institutions. Indeed, to our ordinary sense of justice, discrimination is more obnoxious than prohibition."

The act, it will be remembered, lays a tax of $250 per annum upon all general brokers, and specifies the character of the several acts of business that shall constitute the person engaged therein a general broker. This is followed by two provisions, the first of which is that the Washington Stock Exchange shall pay the sum of $500 per annum "in lieu of tax on the members thereof for business done on said exchange." The second is "that any broker who is a member of a regularly organized stock exchange located outside of the District of Columbia and transacting a brokerage business therein" shall pay $100 per annum. No one denies that Congress, in the exercise of its power of local taxation under the limitations of the 5th Amendment, is vested with ample discretion in the adjustment of the system, which extends to the classification of property, of trades, callings, and professions, and the imposition of different specific taxes upon the different classes of property and of trades, callings, and professions. Wide discretion in these respects has always been accorded to the legislatures of the States under the limitations of the 14th Amendment. *Bell's Gap R. Co.* v. *Pennsylvania,* 134 U. S. 232, 237, 33 L. ed. 892, 895, 10 Sup. Ct. Rep. 533; *Pacific Exp. Co.* v. *Seibert,* 142 U. S. 339, 351, 35 L. ed. 1035, 1039, 3 Inters. Com. Rep. 810, 12 Sup. Ct. Rep. 250; *Magoun* v. *Illinois Trust & Sav. Bank,* 170 U. S. 283, 42 L. ed. 1037, 18 Sup. Ct. Rep. 594. The expediency and abstract justice of making these classifications and imposing different burdens upon the constituents of each class is clearly not a matter of judicial inquiry or determination.

But it is equally clear that the power of selection for classifi·cation is not an arbitrary one, but must have a reasonable foundation. It "must always rest upon some difference which bears a reasonable and just relation to the act in respect to which the classification is proposed, and can never be made arbitrarily and without any such basis." *Gulf, C. & S. F. R.Co.* v. *Ellis,* 165 U. S. 150, 155, 41 L. ed. 666, 668, 17 Sup. Ct. Rep. 257.

It remains now to consider and determine the reasonableness of the grounds of the classification upon which rests the difference between the rate of taxation imposed upon the plaintiff in error and that imposed upon others engaged in the same business.

The first proviso of the section in question does not in fact create a separate class of general brokers. Its primary object is to impose an annual tax upon the Washington Stock Exchange, which shall be in lieu of a tax upon its members, not, however, as general brokers, but "for business done on said exchange."

There is no evidence of the nature of the organization of this exchange, or of the character of the business done thereon; but it is agreed by counsel that its operations are confined to bona fide sales of regular stocks and bonds for actual delivery. Offering no facilities or opportunities for dealing in "futures," or making contracts upon margins only, the exchange affords but a limited field for brokerage; and one who confines himself exclusively to business thereon is clearly not a general broker as defined in the statute. This seems not an unreasonable ground of classification, and justifies the imposition of a license tax upon the association as a whole, instead of upon its members. But when a member is engaged in the business of a general broker, as defined in the law, in addition to that done on the exchange, he becomes subject to the tax imposed on such brokers. Membership of and doing business on the Washington exchange do not entitle the general broker to exemption.

In our opinion there is no reasonable foundation for the classification of the second proviso to support the discrimination in the rate of taxation thereby made between persons engaged in the same general business. If there were a general exchange in the

city of Washington on or through the agency of which all the business of a general broker, as defined in the taxing section, might be transacted,—an association which might be taxed upon its calling, property, franchise, and revenues, as well as disciplined upon occasion—then there might be ground, as in the first proviso, for discrimination between its members, whose business is transacted thereon and under its rules, and general brokers, not members of the same, whose operations are carried on independently. But why should membership of exchanges organized in other States entitle one to a discrimination in his favor in the imposition of taxes for the pursuit of the calling of a general broker in the District of Columbia?

There is no satisfactory answer to this question. The elements of classification before suggested do not exist. The conditions are completely changed. Congress has no jurisdiction whatever over exchanges organized under the laws of the States, for purposes of visitation, discipline, or taxation.

It was said on the argument that the discrimination is intended to operate against "curbstone" brokers and operators of "bucket shops."

If there be such persons whose operations injuriously affect the public weal, prohibition, rather than discriminating license taxes, would seem to be the appropriate remedy. The answer to the argument is, however, that the statute does not in words undertake to make such distinction, and there is nothing in the evidence to enlighten the situation.

The statute, as we are constrained to regard it, by imposing an unreasonable burden upon the right of a citizen to pursue a lawful occupation open to his competitors upon less onerous terms—which right of occupation is, as we have seen, of the nature of property—operates substantially as the taking of property without due process of law, and is therefore within the prohibition of the 5th Amendment of the Constitution.

The judgment will be reversed, and the case remanded, with direction to enter a judgment discharging the plaintiff in error. It so ordered.                                    *Reversed.*

Chief Justice Alvey dissenting.

On the application of the defendant in error, the District of Columbia, a writ of error to the Supreme Court of the United States was granted June 26, 1903.