## WASHINGTON LOAN & TRUST CO. v. ALLMAN.
### No. 6081.

Court of Appeals of the District of Columbia.
Argued Feb. 5, 1934.
Decided March 5, 1934.

Rehearing Denied March 26, 1934.

Arthur Peter, Charles V. Imlay, and Vinson L. Smathers, all of Washington, D. C., for appellant.

Edward F. Colladay and Joseph C. McGarraghy, both of Washington, D. C., for appellee.

W. W. Millan, William E. Richardson, and Milton D. Campbell, all of Washington, D. C., amici curiæ.

Before MARTIN, Chief Justice, and ROBB, VAN ORSDEL, HITZ, and GRONER, Associate Justices.

GRONER, Associate Justice.

The Departmental Bank was incorporated under the laws of Arizona in August, 1920. Its charter allowed it to do business within or without that state. Immediately after its incorporation it established a banking house in Washington City, and continuously thereafter did business there and nowhere else. In July, 1932, the Comptroller of Currency, having determined the bank was insolvent, took possession, appointed appellee as receiver, and a little later made an assessment upon the shareholders equal to 100 per cent. of the par value of the shares of its capital stock. Appellant, as the owner of 102 shares of stock, refused to pay the assessment. The receiver brought suit, and appellant demurred to the declaration. The lower court overruled the demurrer, and, appellant having refused to plead further, judgment went against him, and he brings the case here on appeal.

The grounds relied on are that the Arizona statutes do not vest power in a federal receiver to enforce double liability against stockholders in an Arizona corporation (bank); that the federal statutes do not attempt to do so; and that there is no power in Congress to enact such a statute.

Article 14, § 11, of the Constitution of Arizona (1910) provides:

"The shareholder or shareholders of every banking or insurance corporation or association shall be held individually responsible, equally and ratably, and not one for another, for all contracts, debts, and engagements, of such corporation or association, to the extent of the amount of their stock therein, at the par value thereof, in addition to the amount invested in such shares of stock;"

Substantially the same language was contained in the charter of incorporation.

■■ The provision of the Arizona Constitution to which we have referred has been considered by the Supreme Court of Arizona, and in the case of Fredericks v. Hammons, 33 Ariz. 310, 264 P. 687, was declared to be self-executing and, without more, to impose double liability on all shareholders of a bank organized after its adoption. It is our duty to follow this construction. Middletown Nat. Bank v. Railway Co., 197 U. S. 394, 404, 25 S. Ct. 462, 49 L. Ed. 803. From this it follows that a purchaser of shares of stock in an Arizona bank voluntarily assumes by the act of purchase an obligation to become liable to the extent provided in the Arizona Constitution, and such an obligation, obviously, is contractual and may be enforced like any other contract.

■ But it is urged here that the Legislature of Arizona (Laws of 1922, c. 31, § 23) had prior to appellant's purchase made definite provisions for the enforcement of the double liability provision of the Constitution and had limited the power to an Arizona receiver, and by him only after a judicial determination of insolvency, and it is insisted that this created a substantive right and that a later statute of Arizona (Laws of 1928, c. 8, par. 227) passed after appellant's purchase of shares, which enlarges the provisions of the act in permitting the claim to be enforced by the superintendent of banks or by any receiver is an impairment of the contract between the shareholder and the corporation and is therefore unconstitutional. But we need not stop to notice this, except to say that the contention is clearly without merit and is contrary to the doctrine approved by the Supreme Court in Henley v. Myers, 215 U. S. 373, 385, 30 S. Ct. 148, 54 L. Ed. 240, and Converse v. Hamilton, 224 U. S. 243, 253, 32 S. Ct. 415, 56 L. Ed. 749, Ann. Cas. 1913D, 1292, where it is said in substance that legislation of this nature is procedural and that methods of procedure in actions on contracts that do not affect the substantial rights of the parties are always subject to the control of the Legislature. Here no new right is created by the amended act, nor any penalty imposed. It neither impairs the obligation of the contract nor increases the liability. Hence, even if it be conceded that under the Arizona law as it was prior to 1928 the shareholders' liability could only be enforced by a receiver appointed pursuant to the provisions of the laws of that state, the limitation no longer exists since, as we have seen, the Legislature, as it had the right to do, has struck down the limitation and provided specifically that the liability may be enforced by "any receiver," and this change, we think, applies to the case of shareholders who purchased before its enactment equally with those who purchased after.

■■ This brings us to the questions whether the federal statute, giving the Comptroller power to appoint a receiver in the case of a foreign banking corporation doing business in the District, is valid; and, if it is, whether the receiver so appointed is empowered, within the provisions of the Arizona laws, to bring the suit. As we think both questions must be answered in the affirmative, we need not consider the further question, whether the receiver, without regard to the provisions of the Arizona laws, would have the same right.

Title 5, § 298, of the D.-C. Code (1929) provides as follows:

"*Banking Institutions to be Under Supervision of Comptroller of Currency.*—All savings banks or savings companies, or trust companies, or other banking institutions, organized under authority of any act of Congress to do business in the District of Columbia, or organized by virtue of the laws of any of the States of this Union, and having an office or banking house located within the District of Columbia where deposits or savings are received, shall be, and are hereby, required to make to the Comptroller of the Currency and to publish all the reports which national banking associations are required to make and publish under the provisions of sections 5211, 5212, and 5213 of the Revised Statutes of the United States, and shall be subject to the same penalties for failure to make such reports as are therein provided, which penalties may be collected by suit before the supreme court of the District of Columbia. And the Comptroller shall have power, when in his opinion it is necessary, to take possession of any such bank or company, for the reasons and in the manner and to the same extent as are provided in the laws of the United States with respect to national banks. ＊ ＊ ＊"

This provision in plain language gives authority to the Comptroller "to take possession" of any bank having a banking house in the District of Columbia, whenever in his opinion it is necessary "to the same extent" as if it were a national bank, and this authority (act June 30, 1876, c. 156, Rev. St. § 5234, 12 USCA §§ 191, 192) of the Comptroller in the case of national banks applies in every case in which he is satisfied of the insolvency of the bank. In such case he may appoint a receiver, and the person so ap-

pointed by the express terms of the law (Rev. St. § 5234, 12 USCA § 192) may enforce the individual liability of the stockholders.

We have therefore here a case in which a banking corporation is formed in one of the United States for the purpose of conducting a banking business in the District of Columbia and which from its organization to its insolvency operates exclusively in this District. If in such a case it is within the power of Congress to provide the conditions under which the bank may do business here, it cannot be successfully urged that it has not done so, for the statutes we have noticed and referred to expressly provide that a bank in such a case "organized by virtue of the laws of any of the States" shall be treated in all respects with relation to its duties and responsibilities as a national bank.

Nor can there be any doubt, in our view, of the power of Congress in the respects mentioned. Congress has all the authority and power in the District of Columbia that a state has within the confines of its own territory. It has also all the power granted by the Constitution to the federal government. It has, therefore, both the reserved powers of the state and the powers granted by the states to the national government, and, except as limited by the Constitution, its power is plenary. The fundamental difference between the several states and the District of Columbia is that in the former there exist separately both the powers of the state and the powers of the general government. In the District the two powers are united and centered in the federal government. The whole subject and its history from the beginning has recently been so fully and so ably discussed by the Supreme Court, speaking through Mr. Justice Sutherland (O'Donoghue v. United States, 289 U. S. 516, 53 S. Ct. 740, 77 L. Ed. 1356), that reference to the opinion in that case is sufficient. Congress, as we have seen, has imposed definite conditions on a banking institution chartered in one of the United States as a prerequisite of doing business in the District of Columbia. That a state has such power is unquestionable. Pinney v. Nelson, 183 U. S. 144, 22 S. Ct. 52, 46 L. Ed. 125. These conditions were in effect when the bank here involved was chartered. Appellant obtained his shares with knowledge not only of the conditions but as well that the bank intended to confine its activities to the District of Columbia. He will not now be heard to say that his corporation is not bound by the laws of the District. When it established its banking house here and held itself out to the public

as doing business here, it submitted itself to and became subject to the provisions of the act of Congress giving the Comptroller power, when in his opinion necessary, to take possession of the bank. To go that far and then to say that the receiver so appointed is without power to collect, for the purpose of satisfying the claims of creditors, the assets of the bank, including a liability of stockholders—prescribed by the law of its incorporation and likewise contained in its charter —would be to deny the power of a state to declare the terms on which a foreign corporation may do business within its borders. That the states have such power is clear; equally clear is it that Congress has it with relation to the District. The question here is not the right of Congress to impose double liability on the shareholder of a foreign corporation. That liability is here fixed by law and contract. Appellant in the purchase of his stock agreed and assented to it. The question is the narrower one whether a receiver appointed by the law of the place in which the corporation is doing business and where its property is located, may, in order to pay its debts, enforce an acknowledged liability. We think the question too plain for argument. The liability here imposed by the Constitution of Arizona, and included in the articles of incorporation, created a contract on the part of the shareholders which followed them wherever they might go, and, in the event of the bank's insolvency, made them liable to respond at the instance of a receiver lawfully appointed at the place where the business was done, as completely and as fully as if the appointment had been made in Arizona. See Thomas v. Matthiessen, 232 U. S. 221, 34 S. Ct. 312, 58 L. Ed. 577.

Affirmed.