**WOOD v. UNITED STATES.**

No. 6646.

United States Court of Appeals for the District of Columbia.

Argued March 6, 1936.

Decided March 25, 1936.

ROBB, Associate Justice, dissenting.

———◆———

Robert I, Miller, William E. Leahy, and William J. Hughes, Jr., all of Washington, D. C., for appellant.

L. C. Garnett, U. S. Atty., and Irvin Goldstein, Asst. U. S. Atty., both of Washington, D.C.

Before MARTIN, Chief Justice and ROBB, VAN ORSDEL, GRONER, and STEPHENS, Associate Justices.

GRONER, Associate Justice.

. Appellant was convicted of petty larceny in the police court of the District of Columbia, and sentenced to 240 days' confinement in jail. We shall call him defendant.

At his trial, twelve prospective jurors were called. In their examination it was disclosed that one of them was the holder of a "bonus certificate"; another was a clerk in the United States Weather Bureau; another a clerk in the Federal Emergency Administration; another a clerk in the Treasury Department; and another a clerk in the Navy Yard. One was a Civil War pensioner. Counsel for defendant challenged each of these prospective jurors individually and collectively for cause, on the ground that each had an interest in the United States which disqualified him to sit in the trial of a criminal case to which the United States was a party. The court disallowed the challenge. When the jury was finally impaneled and sworn, one of the 12 was a clerk in the Treasury Department, one a clerk in the Navy Yard, and one a recipient of a Civil War pension. All had been challenged for cause, both before and after the exhaustion of defendant's peremptory challenges. The case was tried. A motion for a new trial, urged on the ground that the jury was illegally constituted, was overruled and sentence imposed. We granted an appeal because of the importance of the question involved.

On the appeal, the United States relies upon a recent statute, Act of August 22, 1935 (Session Laws, 1st Sess., 74th Congress 1935, part 1, 49 Stat. p. 682), entitled, "An Act To amend the law providing for exemptions from jury service in the District of Columbia." It reads as follows:

"Be it enacted by the Senate and House of Representatives of the United States of America in Congress assembled, That section 360 of title 18 of the Code of the District of Columbia of 1929, otherwise known as 'section 217 of the Code of Law for the District of Columbia,' approved March 3, 1901, be, and the same is hereby, amended to read as follows:

"'All executive and judicial officers of the Government of the United States and of the District of Columbia, all officers and enlisted men of the Army, Navy, Marine Corps, and Coast Guard of the United States in active service, those connected with the police and fire departments of the United States and of the District of Columbia, counselors and attorneys at law in actual practice, ministers of the gospel and clergymen of every denomination, practicing physicians and surgeons, keepers of hospitals, asylums, almshouses, or other charitable institutions created by or under the laws relating to the District of Columbia, captains and masters and other persons employed on vessels navigating the waters of the District of Columbia shall be exempt from jury duty, and their names shall not be placed on the jury lists.

"'All other persons, otherwise qualified according to law whether employed in the service of the Government of the United States or of the District of Columbia, all officers and enlisted men of the National Guard of the District of Columbia, both active and retired, all officers and enlisted men of the Military, Naval, Marine, and Coast Guard Reserve Corps of the United States, all notaries public, all postmasters and those who are the recipients or beneficiaries of a pension or other gratuity from the Federal or District Government or who have contracts with the United States or the District of Columbia, shall be qualified to serve as jurors in the District of Columbia and shall not be exempt from such service: Provided, That employees of the Government of the United States or of the District of Columbia in active service who are called upon to sit on juries shall not be paid for such jury service but their salary shall not be diminished during their term of service by virtue of such service, nor shall such period of service be deducted from any leave of absence authorized by law.' Approved, August 22, 1935."'

Prior to the passage of this statute, the provision with relation to the qualifications of a juror was that he should be a citizen of the United States, a resident of the District of Columbia, over 21 and under 65 years of age, able to read and write and understand the English language, and a person who had never been convicted of a felony or misdemeanor involving moral turpitude. In 1908, the Supreme Court held in Crawford v. United States, 212 U.S. 183, 29 S.Ct. 260, 264, 53 L.Ed. 465, 15 Ann. Cas. 392, that an employee of the United States was not qualified to serve as a member of a petit jury in the District of Columbia in the trial of a criminal case. The effect of the decision and of others of like nature which followed, resulted, it is said, in narrowing the eligible list of jurors in the District to the point where it sometimes became difficult to secure jurors possessing the necessary qualifications. To correct this, Congress extended the list of eligibles to include employees of the United States and of the District of Columbia, officers and enlisted men of the National Guard and of the Military, Naval, Marine, and Coast Guard Reserve Corps, notaries public, postmasters, and recipients of pensions and gratuities from the United States or the District, as well as those having contracts with the United States or the District; and the question we have to decide is whether this statute, when applied in a criminal case like the present, is in violation of the provisions of the Sixth Amendment guaranteeing to the accused in all criminal prosecutions the right of trial by an impartial jury. Stated otherwise, the question is whether defendant has been accorded a trial by an impartial jury within the meaning of the Sixth Amendment of the Constitution.

■ It is, of course, elementary that all the provisions of the Constitution are in all respects applicable to the District of Columbia. Callan v. Wilson, 127 U.S. 540, 550, 8 S.Ct. 1301, 1304, 32 L.Ed. 223; Capital Traction Co. v. Hof, 174 U.S. 1, 5, 19 S.Ct. 580, 43 L.Ed. 873; Downes v. Bidwell, 182 U.S. 244, 21 S.Ct. 770, 777, 45 L.Ed. 1088. And in the Downes Case, the court said: "This District had been a part of the states of Maryland and Virginia. It had been subject to the Constitution, and was a part of the United States. The Constitution had attached to it irrevocably. There are steps which can never be taken backward. The tie that bound the states of Maryland and Virginia to the Constitution could not be dissolved, without at least the consent of the Federal and state governments to a formal separation. The mere cession of the District of Columbia to the Federal government relinquished the authority of the states, but it did not take it out of the United States or from under the ægis of the Constitution. Neither party had ever consented to that construction of the cession. If, before the District was set off, Congress had passed an unconstitutional act affecting its inhabitants, it would have been void. If done after the District was created, it would have been equally void; in other words, Congress could not do indirectly, by carving out the District, what it could not do directly. The District still remained a part of the United States, protected by the Constitution."

■ It is equally elementary that the word "jury" and the words "trial by jury" and "impartial jury" should be construed with reference to the meanings they had in England and at the time of the adoption of the Constitution and Bill of Rights. Thompson v. Utah, 170 U.S. 343, 18 S.Ct. 620, 42 L.Ed. 1061. The American colonists regarded the right to trial by jury, which, of course, means trial by an impartial jury, as "the most transcendent privilege which any subject can enjoy." They regarded their claim to it as the clear and inevitable result of their origin and historical development. "When our more immediate ancestors re-

moved to America, they brought this great privilege with them, as their birthright and inheritance, as a part of that admirable common law which had fenced round and interposed barriers on every side against the approaches of arbitrary power. It is now incorporated into all our State constitutions as a fundamental *right,* and the Constitution of the United States would have been justly obnoxious to the most conclusive objection if it had not recognized and confirmed it in the most solemn terms." 2 Story on the Constitution, § 1779.

At common law, employees or servants of a party to a suit were disqualified as jurors on the theory of implied prejudice or bias. In Coke's Commentary on Littleton's Institute (p. 155) it is stated: "He that is of a jury, must be liber homo, that is, not only a free-man and not bond, but also one that hath such freedom of mind as he stands indifferent as he stands unsworn."

And Blackstone defined a principal cause of challenge as one "where the cause assigned carries with it prima facie evident marks of suspicion either of malice or favour"; and this situation, he declared, exists as to jurors in all cases of the relation of master and servant. 3 Black.Comm. 358.

■ Without more, therefore, it is safe to say that at common law the relationship of employer and employee worked an absolute disqualification, and this was equally true in this country at the time of the adoption of the Constitution. But it is insisted, on the part of the United States, that, since the right to establish qualifications for those who shall serve as jurors is a matter intrusted to the state, it is within the exclusive power of the Legislature to impose qualifications different from those recognized at common law. Thompson and Merriman on Juries, § 23. That this is generally true in the states is uncontroverted; and so the United States says that the Congress, sitting as a Legislature for the District of Columbia, may determine and declare what those qualifications shall be. But the answer to this is obvious, for, though the Congress possesses over the District "the combined powers of a general and of a state government in all cases where legislation is possible,"—Stoutenburgh v. Hennick, 129 U.S. 141, 147, 9 S.Ct. 256, 257, 32 L.Ed. 637, there is, as was said in Callan v. Wilson, supra, "Nothing in the history of the constitution, or of the original amendments, to justify the assertion that

the people of this District [District of Columbia] may be lawfully deprived of the benefit of any of the constitutional guaranties of life, liberty, and, property—especially of the privilege of trial by jury in criminal cases." And this brings us back to a consideration of the limitations contained in the Sixth Amendment which alone apply to the United States.

■ The elements constituting trial by jury have been frequently defined by the courts as comprising a jury of twelve, under the superintendence of a judge, and a unanimous verdict. But these particular elements are only partial and are no more important than the specific provisions in the Sixth Amendment that the trial shall be speedy and public, that the jury shall be impartial, that the accused shall be confronted by the witnesses against him, and shall have compulsory process for obtaining his own witnesses, and the assistance of counsel. Any statute which destroys a single one of these substantial and essential features of the right to jury trial is violative of the provisions of the Amendment and offends a fundamental principle. The right to a jury of twelve and that its verdict shall be unanimous is no more sacred than the right that the jury shall be impartial. The precise point we have in mind, that is to say, that all the common-law elements of jury trial are imbedded in the constitutional provisions and are beyond the authority of the legislative department to destroy or abridge, is asserted by Mr. Justice Sutherland in Patton v. United States, 281 U.S. 276, 50 S.Ct. 253, 255, 74 L.Ed. 854, 70 A.L.R. 263. At page 290 of 281 U. S., 50 S.Ct. 253, 74 L.Ed. 854, 70 A.L.R. 263, he says: "The foregoing principles, while not furnishing a precise basis for an answer to the question here presented, have the useful effect of disclosing the nature and scope of the problem, since they demonstrate the unassailable integrity of the establishment of trial by jury in all its parts, and make clear that a destruction of one of the essential elements has the effect of abridging the right in contravention of the Constitution."

■ Unless, therefore, it can be successfully maintained that the act does not destroy an essential element of defendant's constitutional rights, it must be condemned. There can be no doubt that the words used in the Sixth Amendment were intended primarily for the protection of the accused. Patton v. United States, supra. And, likewise, there can be no doubt that the purpose

of the amendment was to secure to the accused the absolute right to be tried by a jury free of bias or prejudice. Here defendant asserted his privilege in due time. He protested that the effect of the act was to destroy his right to challenge for cause; that the act forced him to inquire of each government employee whether in fact he was or was not impartial, and to be bound by his answers, and thus, as he claims, to be tried by a jury which, by every standard of the common law, was not an impartial jury.

The question, therefore, is: Does the relationship of employee and employer in such a case necessarily imply bias?

The Supreme Court in the Crawford Case, supra, said that bias is an elusive condition of the mind that is difficult, if not impossible, to recognize. And hence, as the court also said, the law wisely implies that, with regard to some of the relations which may exist between the juror and one of the parties, bias is assumed and evidence of its actual existence need not be given. Among those of whom it is implied, Blackstone says are included the party's master, his servant, his counselor, and his steward. We know of no dissent to this general proposition in all the intervening period; and so now it is universally held not permissible to permit a clerk or employee of a private party to sit as a juror in a civil case. Indeed, the rule is that a very small or insignificant interest in the result of the trial is sufficient to disqualify a person from sitting as a juror. In short, wherever there appears to be any self-interest, that fact provides an absolute disqualification. The rule but recognizes the unalterable fact that our human nature inevitably looks with favor upon the side that supplies the means of existence. And it would seem, in fairness, that the rule should and ought to apply equally to an employee of the United States. But we have no need to rely upon our own views, or to set them forth at any length, for the Supreme Court in the Crawford Case has foreclosed all doubt on that subject. There a druggist was called on the jury panel, and in his examination on the voir dire, stated he did not know the defendant and had formed no opinion about his case; that his drug store was a subpostal station; and that he was the clerk in charge, and was paid $300 a year by the United States as compensation, out of which he paid the rental of the premises and the other expenses. In other words, that he received a modest compensation from the United States for keeping on hand and selling postage stamps. Such a relationship is far less intimate than that sustained to the United States by the jurors challenged in the present case. Yet he was held incompetent, the court saying: "A jury composed of government employees where the government was a party to the case on trial would not in the least conduce to respect for, or belief in, the fairness of the system of trial by jury. To maintain that system in the respect and affection of the citizens of this country it is requisite that the jurors chosen should not only in fact be fair and impartial, but that they should not occupy such relation to either side as to lead, on that account, to any doubt on that subject."

And: "The position of the juror in this case is a good instance of the wisdom of the rule. His position was that of an employee who received a salary from the United States, and his employment was valuable to him, not so much for the salary as for the prospect such employment held out for an increase in his business from the people who might at first come to his store for the purchase of stamps, etc. It need not be assumed that any cessation of that employment would actually follow a verdict against the government. It is enough that it might possibly be the case; and the juror ought not to be permitted to occupy a position of that nature to the possible injury of a defendant on trial, even though he should swear he would not be influenced by his relations to one of the parties to the suit in giving a verdict."

The ruling made in that case was grounded, not on the statute then in effect, but upon the common-law doctrine of qualification (the court indicating that the statute did not assume to change the common law). But it is well settled, as above pointed out, that at the time of the adoption of the Constitution, the common law concept of qualification was embodied in the Constitution by the use of the phrase, in the Sixth Amendment, "an impartial jury." That same doctrine, as we have seen, exists today with equal force, and it is the duty of courts to give it effect and thus preserve the right of an accused to trial by a constitutional jury. And so we think that there is no more right to remove the disqualification of employment in the case of the sovereign than to remove it in the case of the citizen. Whether in the one or the other, the inherent disqualification of interest is a positive bar.

It may well be that in the case now under consideration the presence of two em-

ployees of the government on the jury did not affect the result, but because this is or may be so in the present case is not conclusive of the question. It is just as likely that in the next case similar conditions *will* affect the conclusion. Can it be doubted that this would be true if an accused were on trial for counterfeiting and the jury trying him were composed of employees of the Treasury Department or the Department of Justice, or can it be doubted either that, if the government were condemning land for forts or arsenals and employees of the Navy or War Departments were on the jury, their personal interests might sway their judgment? These, and other like illustrations instantly suggest themselves and prove unanswerably the wisdom of the rule. But beyond all of these is the main consideration that the strength of the law is the respect of the people for the law; and there can be no respect for the law except in the recognition and enforcement of those basic principles of justice "which inhere in the very idea of free government" and which it was the object and purpose of the Bill of Rights to secure and protect.

■ In the District of Columbia more than a hundred thousand government employees will be qualified as jurors if the statute is valid. In the instant case, when called, they represented nearly half the panel. In other cases they may well represent the whole. It is not enough to say that they *might* discharge their duties fairly to the accused; they *must* be *omni exceptione majus.*

Reversed.

ROBB, Associate Justice (dissenting).

In the Crawford Case, the court said: "We do not think that § 215 of the [1901] Code of the District [D.C.Code 1929, T. 18, § 357] includes the whole subject of the qualifications of jurors in that District. *If that section, together with § 217 [section 360, tit. 18, D.C.Colo. 1929] were alone to be considered, it might be that the juror was qualified.* But by the common law, a further qualification exists. If that law remains in force in this regard in this District a different decision is called for from that made in this case. The common law in force in Maryland, February 27, 1801, remains in force here, except as the same may be inconsistent with or replaced by some provision of the Code for the District. * * * It has not been contended that the common law upon the subject of jurors was not in force in Maryland at the above-named date, or that it did not

remain in force here, at least up to the time of the passage of the Code. Jurors must at least have the qualifications mentioned in § 215, but that section does not, in our opinion, so far alter the common law upon the subject as to exclude its rule that one is not a competent juror in a case if he is master, servant, steward, counsellor, or attorney of either party. In such case a juror may be challenged for principal cause as an absolute disqualification of the juror." (Italics supplied.)

It thus appears that the decision in that case was put upon the common law rule—there being no statutory provision inconsistent with that rule.

The question raised in the present case was not involved, and, of course, not decided in that case. "If," said the court, "that section [section 215], together with § 217, were alone to be considered, it might be that the juror was qualified." 212 U.S. 183, at page 195, 29 S.Ct. 260, 53 L.Ed. 465, 15 Ann.Cas. 392. But the court held that those sections must be read in conjunction with the common law so far as that law had not been altered thereby. It will not be denied that the Act of 1935, "to amend the law providing for exemptions from jury service in the District of Columbia," is in part inconsistent with the common-law rule. Prior to that enactment, bias was conclusively implied as to those embraced within the provision of section 217 of the Code exempting "all executive and judicial officers, salaried officers of the Government of the United States and of the District of Columbia." This conclusive implication of bias continues to apply to those embraced within the provision of the first paragraph of section 217, as amended by the 1935 act (49 Stat. 682) exempting "All executive and judicial officers of the Government of the United States and of the District of Columbia." But the last paragraph of section 217, as amended, overrides the implication of bias as to the persons covered by the last paragraph, and, if "otherwise qualified according to law," the amendment makes the persons affected "qualified to serve as jurors in the District of Columbia."

In my view, that provision is well within the constitutional power of Congress. It removes the disqualification, according to the majority opinion, of more than 100,000 government employees. In point of intelligence, character, and general fitness for jury service, those employees rank high.

The judgment should be affirmed.