110 F.2d 246 (1940)
NEILD et al.
v.
DISTRICT OF COLUMBIA.
No. 7213.
United States Court of Appeals for the District of Columbia.
Decided January 15, 1940.
*247 *248 Alvin L. Newmyer and David G. Bress, both of Washington, D. C., for appellants.
Elwood H. Seal, Corp. Counsel, Vernon E. West, Principal Asst. Corp. Counsel, and Glenn Simmon, Asst. Corp. Counsel, all of Washington, D. C., for appellee.
Before GRONER, Chief Justice, and STEPHENS, MILLER, EDGERTON, and VINSON, Associate Justices.
MILLER, Associate Justice.
Congress enacted a revenue law for the District of Columbia, effective August 17, 1937, which imposed a gross receipts tax upon the privilege of engaging in business in the District during the fiscal year 1937-1938.[1] Appellants are a partnership which buys and sells perishable fruit and other produce. Their place of business is in the District and their affairs are directed and carried on from there. However, in the course of their business they purchase goods outside the District, which are then shipped to their place of business in the District, pending resale and delivery. A large percentage of their gross receipts is derived from sales made to customers outside the District by appellants' agents who work in the Virginia area adjacent thereto. Most of the goods thus sold are shipped from the District, but a small portion is diverted to Virginia buyers without ever being in the District.
The tax imposed in the present case was based upon gross receipts from business *249 conducted in the manner described. Appellants paid the tax under protest and thereupon sued to recover the amount paid. The lower court sustained the validity of the tax. We granted a writ of error. The appeal was argued originally before a court of three members but, because of the importance of the questions herein involved, we set the case, upon our own motion, for reargument before a court of five members.
Appellants contend that the decision of the lower court was erroneous because (1) commerce between the District of Columbia and a state is interstate commerce within the meaning of the Constitution; (2) hence the tax in the present case was levied upon gross receipts from transactions carried on by them in interstate commerce; and (3) such tax constitutes a direct and unlawful burden thereon.[2] However, even assuming  and we do not decide the question  that the tax in the present case constitutes a burden upon interstate commerce,[3] nevertheless, Congress had full power to impose it.[4]
Power to legislate for the District of Columbia is expressly delegated by the Constitution. Article I, Section 8, Clause 17, gives to Congress power "To exercise exclusive Legislation in all Cases whatsoever, over such District (not exceeding ten Miles square) as may, by Cession of particular States, and the Acceptance of Congress, become the Seat of the Government of the United States, * *." [Italics supplied] That delegation is sweeping and inclusive in character, to the end that Congress may legislate within the District for every proper purpose of government.[5] Within the District of Columbia, there is no division of legislative powers such as exists between the federal and state governments.[6] Instead *250 there is a consolidation thereof,[7] which includes within its breadth all proper powers of legislation.[8] Subject only to those prohibitions of the Constitution which act directly or by implication[9] upon the federal government,[10] Congress possesses full and unlimited jurisdiction[11] to provide for the general welfare of citizens within the District of Columbia by any and every act of legislation which it may deem conducive to that end.[12] In fact, when it legislates for the District, Congress acts as a legislature of national character,[13] exercising complete legislative control as contrasted with the limited power of a state legislature, on the one hand, and as contrasted with the limited sovereignty which Congress exercises within the *251 boundaries of the states, on the other.[14] As the commerce clause operates as a limitation solely upon the states,[15] it constitutes no bar to the action of Congress in any event.[16] If the dictum to the contrary in Potomac Electric Power Co. v. Hazen, 67 App.D.C. 161, 90 F.2d 406, certiorari denied, 302 U.S. 692, 58 S.Ct. 11, 82 L.Ed. 535, was intended to apply to the District of Columbia, we decline to follow it.
In support of their contention, appellants rely upon the language of cases in which it has been said that Congress may exercise within the District substantially the powers which the legislature of a state may exercise within that state;[17] and that when so doing it acts "in like manner as the legislature of a State."[18] This is true, but it does not follow that when Congress acts in such manner it acts subject to the limitations imposed by the Constitution upon the states. If it chooses thus to exercise a part, only, of its powers, it may resemble a state legislature in so doing, but, by so doing, it is not deprived of the rest of its powers. It may exercise, also, within the District, general legislative powers delegated to Congress by the Constitution; as for example the power granted by the commerce clause.[19] When it acts by virtue of these general legislative powers it is free of the restraints which are imposed by the Constitution upon the states.[20]
Appellants contend further that although Congress has power to impose a burden upon interstate commerce, if it does so, the burden imposed must be uniform throughout the nation; hence, that it has indulged in an improvident exercise of power in the present case, because the statute here in controversy imposes a burden upon the commerce of a limited area only. There are several answers to this contention. In the first place, as has been pointed out already, this statute is an exercise of the power of Congress to legislate for the District of Columbia and not an exercise of its power to regulate commerce. *252 In the second place, even assuming that it was the purpose of Congress to regulate commerce between the District of Columbia and adjoining states, the statute in controversy would constitute a proper exercise of its power to do so. When Congress acts under the commerce clause it is not necessary that its enactments shall provide for uniform regulation of commerce throughout the nation.[21] "Congress may choose the commodities and places to which its regulation shall apply. Congress may consider and weigh relative situations and needs."[22] And the power of choice and localized action which is proper under the commerce clause is, obviously, even more appropriate when it acts also under the District of Columbia clause, in the exercise of its power of "exclusive legislation in all cases whatsoever." Congress had power, therefore, to impose the burden of taxation complained of in the present case, by virtue of either or both of these constitutional provisions.[23]
Whether it may be wise for Congress to use, for the District, a method of taxation which would contravene  if they were applicable  the prohibitions imposed by the commerce clause upon the states, and thus to erect barriers which they are forbidden to erect, is indeed a serious question of public policy[24] but it is not one for the courts to decide. The end is a permissible one under the commerce clause as well as under the broad powers delegated by Article I, Section 8, Clause 17, and hence the means used are proper if Congress deems it wise to use them.[25]
Appellants contend further that the Act violates the due process clause of the Fifth Amendment because  they argue  it is retroactive, arbitrary and confiscatory in its operation; for, while it purports to impose *253 a tax upon the privilege of engaging in business in the District during the fiscal year 1937-1938, it makes the measure of the tax the gross receipts of the taxpayer from his business during the calendar year 1936.[26] Appellants point out that although their gross receipts for 1937-1938 might have been only a fraction of those for 1936, still, for the privilege of carrying on business during the later period, they were nevertheless required to pay a tax based on receipts during the earlier period; consequently, they contend that although the exaction purports to be a tax for the fiscal year 1937-1938, it is in fact a tax upon the business transactions of 1936; hence retroactive in its operation, not merely in time but in all its implications, and without any reasonable relation between the benefit of the privilege and the basis used for determining the tax.
So far as concerns the due process clause of the Fifth Amendment, generally, the Supreme Court has said: "That a federal statute passed under the taxing power may be so arbitrary and capricious as to cause it to fall before the due process of law clause of the Fifth Amendment is settled."[27] However, so far as concerns the specific application of the due process clause, which appellants seek to make in the present case, the Supreme Court has recently pointed out that "a tax is not necessarily unconstitutional because retroactive. * * * In each case it is necessary to consider the nature of the tax and the circumstances in which it is laid before it can be said that its retroactive application is so harsh and oppressive as to transgress the constitutional limitation."[28] In this connection it is important to note that we are not called upon to decide whether, if the Act here involved had been so phrased as to tax, directly, gross receipts of business transactions carried on during 1936, it would have been objectionable. Such a statute might, perhaps, properly be characterized as so retroactive and arbitrary as to be confiscatory, within the meaning of such decisions as Nichols v. Coolidge,[29] Untermyer v. Anderson,[30] and Blodgett v. Holden.[31] But "it has long *254 been established that an Act of Congress which on its face purports to be an exercise of the taxing power is not any the less so because the tax is burdensome * * *" or even though it may tend to restrict or suppress the thing taxed.[32] As the tax in the present case was imposed upon the privilege of engaging in business in the District of Columbia during the year 1937-1938, the question to be decided, therefore, is merely whether the reference to gross receipts during 1936 constitutes a proper measure to be applied in determining the amount of the tax to be paid for that privilege. In our view the language of the statute, read as a whole, clearly shows that the reference was solely for that purpose,[33] and consequently does not make the Act retroactive.[34] The rule is well settled that unless the contrary plainly appears a statute operates prospectively only;[35] in other words, "that a statute ought not to be construed to operate retrospectively in the absence of clear, strong, and imperative language commanding it;"[36] and if a double sense is possible that which rejects retroactive operation must be selected.[37]
A frequently quoted statement by Justice Story, describes a retroactive law as follows: It "takes away or impairs vested rights acquired under existing laws, or creates a new obligation, imposes a new duty, or attaches a new disability, in respect to transactions or considerations already past * * *."[38] Properly read, the language *255 of the Act in the present case produces no such result.[39] In Section 5 thereof it is provided that each person engaged in business in the District after 60 days from the date of the passage of the law shall pay "for the fiscal year 1937-1938 a tax equal to two-fifths of 1 per centum of the gross receipts in excess of $2,000 derived from such business for the calendar year 1936 * * *."[40] [Italics supplied] Again, in the same section, it is provided that "If a taxpayer was not engaged in business during the whole of the calendar year 1936 he shall pay the tax imposed by this title measured by his gross receipts during the period of one year from the date when he became so engaged; and if such taxpayer shall not have been so engaged for an entire year prior to the approval of this Act, then the tax imposed shall be measured by his gross receipts for the period during which he was so engaged, multiplied by a fraction, the numerator of which shall be 365 and the denominator of which shall be the number of days during which he was so engaged."
Paraphrasing the language of the Supreme Court in Educational Films Corp. v. Ward,[41] it is plain that these provisions can have no application independent of appellants' enjoyment of the privilege of engaging in business in the District during the year 1937-1938. If appellants had ceased to do business before the effective date of the Act,[41a] they would not have been subject to any tax thereunder, although they had received during the calendar year 1936, or a part thereof, gross receipts which the Act makes the measure of the tax. Since it can be levied only when the taxpayer both exercises the privilege of doing business in the taxable year and has been in receipt of gross receipts during a previous year, the tax, obviously, is not exclusively on gross receipts apart from the privilege. Any burden placed upon the gross receipts themselves by their use as a measure of value of the privilege taxed "was fortuitous and incidental."[42] "A statute is not retroactive merely because it draws upon antecedent facts for its operation",[43] and that is all the Act does in the present case.
*256 Moreover, we are satisfied that, in the light of the facts of the present case, the retrospective measure provided by the pertinent statute is a proper and reasonable one. Without attempting to draw the line closely, we may assume that if Congress had designated, as a measure, receipts of a year so remote from the year 1937-1938 as to produce grossly disproportionate taxes for the exercise of equivalent privileges, such a statute would have violated the due process clause. Here, on the contrary, the year selected was the calendar year next preceding the fiscal year for which the tax was levied, and the year which would most naturally and logically be chosen for the purpose. Business transacted during the governmental fiscal year, in most instances, will have a reasonable relation to the business during the preceding calendar year. The District of Columbia Government operates on a fiscal year basis, whereas many businesses operate on a calendar year basis. Even where a business fiscal year is used it may not correspond with the fiscal year of the District, hence it may well have been thought by Congress that the use of the calendar year as a measure would be more convenient to business, than gross receipts for the preceding governmental fiscal year. In this connection it is significant to note that in Educational Films Corp. v. Ward, supra, the measure for the tax on the privilege of doing business for the next governmental fiscal year was the net income for the preceding calendar year, or the fiscal year of the individual business. In Bass, Ratcliff & Gretton v. State Tax Comm.,[43a] it was the preceding year's net income. In American Mfg. Co. v. St. Louis,[43b] the Court considered a tax on the privilege of manufacturing measured by the sale price of manufactured goods sold during the preceding year. Under this tax, goods manufactured prior to the year preceding imposition of the tax could enter into the measure for the tax on the privilege of manufacturing, if sold during the year preceding the imposition of the tax. The Court approved the measure selected for the tax and upheld it.
Appellants contend also that the Act is unconstitutional because it is discriminatory and arbitrary; for the reason that no sufficient difference exists between a commission merchant who engages in consignment transactions, and a wholesaler who purchases and sells outright, to justify a classification based thereon; or to justify a tax based upon the gross receipts of the latter, while the former is taxed only upon gross commissions.[44] Appellants' argument is based upon the theory that "Congress may not deprive residents of the District of Columbia of their equal protection of the laws, even though express provision for equal protection only appears in the Fourteenth Amendment." Most of the cases upon which they rely interpret the equal protection clause of that amendment.[45]
In Lappin v. District of Columbia[46]  cited by appellants  this court, while stating that the Fourteenth Amendment "does not purport to extend to authority exercised by the United States", used language which is susceptible of the meaning that the equal protection clause of that amendment should be integrated into the law of the District. But there is no reason for confusion upon this point. The Fourteenth Amendment is not applicable in the District of Columbia.[47] To *257 the extent that the privilege of "equal protection of the laws" exists in the District of Columbia it depends upon the due process clause of the Fifth Amendment and other provisions of the Constitution which are applicable to the federal government.[48] In a sense it may be said that every citizen is entitled to the equal protection of the laws as they may be adopted and administered by the federal government throughout the land. But this privilege does not depend upon or arise out of the Fourteenth Amendment.[49] The nature and purpose of the federal government require that it be "subject to restraints less narrow and confining" than the individual states.[50] This is particularly true concerning the area in which the national capital is located.[51] If the decision in Lappin v. *258 District of Columbia,[52] and the dicta in Sims v. Rives,[53] and Wood v. United States,[54] are in conflict with the foregoing statement they are, to that extent, hereby repudiated.
The delegation to Congress, of power to exercise exclusive legislation in all cases over the District of Columbia, included the power to tax.[55] Consequently, as the Fifth Amendment, unlike the Fourteenth, contains no equal protection clause,[56] cases applying standards appropriate to that clause are inapplicable in the present case. It is true the Supreme Court has recently suggested that it might assume that discrimination, in a federal taxing statute, "if gross enough, is equivalent to confiscation and subject under the Fifth Amendment to challenge and annulment."[57] But, giving to appellants the benefit of a like assumption adds nothing to the substance of their contention. Not only are we satisfied that the classification in the present case is not so grossly discriminatory as to amount to confiscation, but that, even if tested by standards applicable  under the equal protection clause of the Fourteenth Amendment  to state taxing statutes, the statute here in controversy must be sustained as a proper exercise of legislative power.[58] For even the states have power to discriminate between persons and callings by classifying them for purposes of taxation; and "such classification need not be either logically appropriate or scientifically accurate."[59] *259 In some cases upholding federal tax statutes the Supreme Court has adverted to the rule applicable to state legislation, on the theory that if lawful according to that rule, a fortiori it must be lawful under the Fifth Amendment, which subjects Congress "to restraints less narrow and confining."[60] Applying that rule to the present case we get the same result. Here it is contended that no sufficient distinction can be drawn between a commission merchant and a dealer to justify the classification made. A commission merchant, or a factor, as he is generally known to the common law, is a commercial agent to whom the possession of personal property is entrusted by or for the owner, to be sold, for a compensation, in pursuance of the agent's usual trade or business.[61] Title to the goods remains in the principal, the factor being merely a bailee for the purposes of the agency.[62] The business of such a commission merchant is manifestly different from a business which is carried on by a person who, instead of dealing with the goods of another, purchases merchandise with his own capital, takes title in his own name and sells for his own account at whatever price he may deem advisable, without direction from another. Clearly there is a substantial difference between the two; sufficient to satisfy even the requirements of the Fourteenth Amendment.[63]
*260 While the power of selection for classification is not an arbitrary one but must, instead, rest upon some difference which bears a reasonable and just relation to the Act in respect to which the classification is proposed[64] nevertheless, such classification is a legislative, not a judicial function. The determination which is made by the legislature is presumed to be supported by facts known to it, unless facts judicially known or proved preclude that possibility. The function of the court is only to determine whether it is possible to say that the legislative decision is without rational basis.[65] As the Supreme Court has said, concerning state taxing statutes: "It is not the function of this Court in cases like the present to consider the propriety or justness of the tax, to seek for the motives or to criticize the public policy which prompted the adoption of the legislation. Our duty is to sustain the classification adopted by the legislature if there are substantial differences between the occupations separately classified. Such differences need not be great. The past decisions of the [Supreme] Court make this abundantly clear."[66]
Stewart Dry Goods Co. v. Lewis,[66a] upon which appellants rely, does not require a different result. There a Kentucky statute imposed on retail merchants a gross sales tax which increased in rate with increase in sales. The Court held the tax discriminatory because: "It exacts from two persons different amounts for the privilege of doing exactly similar acts because the one has performed the act oftener than the other." 294 U.S. at page 566, 55 S.Ct. at page 532, 79 L.Ed. 1054. The case at bar presents a classification of an entirely different character, being based upon the nature of the business conducted rather than upon the amount of sales made. As pointed out in the opinion in the Stewart Dry Goods case, "even a small difference in the method of conducting business" is sufficient. 294 U.S. at page 565, 55 S.Ct. at page 531, 79 L.Ed. 1054. Likewise, Quaker City Cab Co. v. Pennsylvania,[66b]  in which there were strong dissents  can be distinguished on the ground that there the business was identical, and the only basis of classification was the difference between corporate and individual management.[67] Thus, even if *261 we were required to decide the present case under the equal protection clause of the Fourteenth Amendment, it would be necessary for us to uphold the decision of the lower court.
We have carefully considered all appellants' assignments and find them to be without merit.
Affirmed.
STEPHENS, Associate Justice, concurs in the result.
NOTES
[1] 50 Stat. 673, 688.
[2] Cf. Gwin, White & Prince, Inc. v. Henneford, 305 U.S. 434, 59 S.Ct. 272, 83 L.Ed. 325; Philadelphia & Southern Steamship Co. v. Pennsylvania, 122 U.S. 326, 336, 7 S.Ct. 1118, 30 L.Ed. 1200; Adams Mfg. Co. v. Storen, 304 U.S. 307, 311, 58 S.Ct. 913, 82 L.Ed. 1365, 117 A.L.R. 429; Western Live Stock v. Bureau of Revenue, 303 U.S. 250, 58 S.Ct. 546, 82 L.Ed. 823, 115 A. L.R. 944.
[3] Cf. The Trade-Mark Cases, 100 U. S. 82, 96, 25 L.Ed. 550: "* * * commerce among the States means commerce between the individual citizens of different States * * *." See Hepburn & Dundas v. Ellzey, 2 Cranch, U. S., 445, 452, 2 L.Ed. 332; Baltimore & O. Railroad Co. v. Harris, 12 Wall., U.S., 65, 86, 20 L.Ed. 354; Downes v. Bidwell, 182 U.S. 244, 259, 21 S.Ct. 770, 45 L.Ed. 1088; Hooe v. Jamieson, 166 U.S. 395, 397, 17 S.Ct. 596, 41 L. Ed. 1049; New Orleans v. Winter, 1 Wheat., U.S., 91, 94, 4 L.Ed. 44, all holding that a citizen of the District of Columbia is not a citizen of a state within the meaning of the Constitution, and, hence, could not sue in the circuit courts of the United States on the ground of diversity of citizenship. Hepburn & Dundas v. Ellzey, supra: "* * * the members of the American confederacy only are the states contemplated in the constitution." It has been held that the full faith and credit clause (U.S.Const. Art. IV, § 1) has no reference to the District of Columbia. Embry v. Palmer, 107 U.S. 3, 2 S. Ct. 25, 27 L.Ed. 346; 1 Willoughby, Constitution of the United States, 2d Ed. 1929, § 145. It has been held, also, that the privileges and immunities clause (U.S.Const. Art. IV, § 2, Cl. 1) is a limitation upon the states only and in no way affects the powers of Congress over the District of Columbia or the territories. Duehay v. Acacia Mut. Life Ins. Co., 70 App.D.C. 245, 105 F. 2d 768, 775, 124 A.L.R. 1268.
[4] Jefferson v. District of Columbia, 40 App.D.C. 381. See also, Hyde v. Southern Ry. Co., 31 App.D.C. 466, 469, 470; Washington Ry. Co. v. Downey, 40 App.D.C. 147, 151, appeal dismissed, 236 U.S. 190, 35 S.Ct. 406, 59 L. Ed. 533.
[5] See Kendall v. United States ex rel. Stokes, 12 Pet., U.S., 524, 619, 9 L.Ed. 481; Atlantic Cleaners & Dyers, Inc. v. United States, 286 U.S. 427, 434, 435, 52 S.Ct. 607, 76 L.Ed. 1204; O'Donoghue v. United States, 289 U.S. 516, 539, 53 S.Ct. 740, 77 L.Ed. 1356; Washington Loan & Trust Co. v. Allman, 63 App.D.C. 116, 70 F.2d 282, certiorari denied, 292 U.S. 649, 54 S.Ct. 859, 78 L.Ed. 1499; Capital Traction Co. v. Hof, 174 U.S. 1, 5, 19 S.Ct. 580, 43 L.Ed. 873; La Forest v. Board of Commissioners, 67 App.D.C. 396, 399, 92 F.2d 547, 550, certiorari denied, 302 U.S. 760, 58 S.Ct. 367, 82 L.Ed. 588; Roberts v. Bradfield, 12 App.D.C. 453, 463, affirmed, 175 U.S. 291, 20 S.Ct. 121, 44 L.Ed. 168; Stoutenburgh v. Hennick, 129 U.S. 141, 147, 9 S.Ct. 256, 32 L.Ed. 637.
[6] Kendall v. United States ex rel. Stokes, 12 Pet., U.S., 524, 619, 9 L.Ed. 1181.
[7] Pollard v. Hagan, 3 How., U.S., 212, 223, 11 L.Ed. 565; Washington Loan & Trust Co. v. Allman, 63 App.D.C. 116, 118, 70 F.2d 282, 284, certiorari denied 292 U.S. 649, 54 S.Ct. 859, 78 L.Ed. 1499.
[8] See Stoutenburgh v. Hennick, 129 U. S. 141, 147, 9 S.Ct. 256, 32 L.Ed. 637.
[9] See El Paso & Northeastern R. Co. v. Gutierrez, 215 U.S. 87, 93, 30 S.Ct. 21, 54 L.Ed. 106; Downes v. Bidwell, 182 U.S. 244, 268, 21 S.Ct. 770, 45 L. Ed. 1088; Citizens' Sav. & Loan Ass'n v. Topeka, 20 Wall, U.S., 655, 662-663, 22 L.Ed. 455.
[10] See First National Bank v. County of Yankton, 101 U.S. 129, 133, 25 L. Ed. 1046; Mormon Church v. United States, 136 U.S. 1, 44, 10 S.Ct. 792, 34 L.Ed. 481; Capital Traction Co. v. Hof, 174 U.S. 1, 5, 19 S.Ct. 580, 43 L.Ed. 873; Sims v. Rives, 66 App.D.C. 24, 31, 84 F.2d 871, 878, certiorari denied, 298 U.S. 682, 56 S.Ct. 960, 80 L.Ed. 1402.

See also, Wight v. Davidson, 181 U.S. 371, 384, 21 S.Ct. 616, 45 L.Ed. 900, holding the Fourteenth Amendment inapplicable to the District of Columbia. On the other hand, the rights and liberties protected by the bill of rights (Amendments I to VIII) against encroachment by the national government have been held applicable to the District although not to the states. Thus, the provisions of the Fourth Amendment are not applicable to the states (National Safe Deposit Co. v. Stead, 232 U.S. 58, 34 S.Ct. 209, 58 L.Ed. 504; Ohio ex rel. Lloyd v. Dollison, 194 U. S. 445, 24 S.Ct. 703, 48 L.Ed. 1062), although they are to the District. United States v. Mattingly, 52 App.D.C. 188, 285 F. 922. The Fifth Amendment requires that a person in the District shall not be tried for the commission of a crime unless on presentment or indictment of a grand jury (United States v. Moreland, 258 U.S. 433, 42 S.Ct. 368, 66 L.Ed. 700, 24 A.L.R. 992), whereas, so far as the states are concerned, this may be dispensed with. Gaines v. Washington, 277 U.S. 81, 86, 48 S.Ct. 468, 72 L.Ed. 793; Hurtado v. California, 110 U.S. 516, 4 S.Ct. 111, 292, 28 L. Ed. 232; Palko v. Connecticut, 302 U. S. 319, 323, 58 S.Ct. 149, 82 L.Ed. 288. Double jeopardy is prohibited in cases of crimes committed in the District (Steck v. United States, 56 App.D.C. 368, 15 F.2d 606), but a like prohibition does not apply to state action. Palko v. Connecticut, 302 U.S. 319, 58 S.Ct. 149, 82 L.Ed. 288. See also, Twining v. New Jersey, 211 U.S. 78, 29 S.Ct. 14, 53 L.Ed. 97. In Callan v. Wilson, 127 U.S. 540, 550, 8 S.Ct. 1301, 32 L. Ed. 223, it was held that under the Sixth Amendment one charged with a crime in the District is entitled to jury trial, although the right to such trials may be abolished by the states. See Jordan v. Massachusetts, 225 U.S. 167, 176, 32 S.Ct. 651, 56 L.Ed. 1038; Maxwell v. Dow, 176 U.S. 581, 20 S.Ct. 448, 494, 44 L.Ed. 597; United Gas Public Serv. Co. v. Texas, 303 U.S. 123, 141, 58 S.Ct. 483, 82 L.Ed. 702. Likewise, the right to trial by jury in common law actions, as provided by the Seventh Amendment, is a limitation upon the District (Capital Traction Co. v. Hof, 174 U.S. 1, 5, 19 S.Ct. 580, 43 L.Ed. 873; Callan v. Wilson, supra) but not upon the states. St. Louis & Kansas City Land Co. v. Kansas City, 241 U.S. 419, 431, 36 S.Ct. 647, 60 L.Ed. 1072; Pearson v. Yewdall, 95 U.S. 294, 24 L. Ed. 436.
[11] Shoemaker v. United States, 147 U. S. 282, 300, 13 S.Ct. 361, 37 L.Ed. 170.
[12] Cf. New York v. Miln, 11 Pet., U. S., 102, 139, 9 L.Ed. 648; Nebbia v. New York, 291 U.S. 502, 523, 54 S.Ct. 505, 78 L.Ed. 940, 89 A.L.R. 1469.
[13] Cohens v. Virginia, 6 Wheat., U. S., 264, 429, 5 L.Ed. 257: "* * * congress is not a local legislature, but exercises this particular power, like all its other powers, in its high character, as the legislature of the Union. The American people thought it a necessary power, and they conferred it for their own benefit. Being so conferred, it carries with it all those incidental powers which are necessary to its complete and effectual execution." See Capital Traction Co. v. Hof, 174 U.S. 1, 5, 19 S.Ct. 580, 43 L.Ed. 873.
[14] In O'Donoghue v. United States, 289 U.S. 516, 539, 53 S.Ct. 740, 746, 77 L.Ed. 1356, the Court quoted with approval from an opinion of Chief Justice Taft, then Circuit Judge, in Grether v. Wright, 6 Cir., 75 F. 742, 756-757, as follows: "`It was meet that so powerful a sovereignty should have a local habitation the character of which it might absolutely control, and the government of which it should not share with the states in whose territory it exercised but a limited sovereignty, supreme, it is true, in cases where it could be exercised at all, but much restricted in the field of its operation. The object of the grant of exclusive legislation over the district was, therefore, national in the highest sense, and the city organized under the grant became the city, not of a state, not of a district, but of a nation. In the same article which granted the powers of exclusive legislation over its seat of government are conferred all the other great powers which make the nation, including the power to borrow money on the credit of the United States. He would be a strict constructionist, indeed, who should deny to congress the exercise of this latter power in furtherance of that of organizing and maintaining a proper local government at the seat of government. Each is for a national purpose, and the one may be used in aid of the other.'"
[15] See Gibbons v. Ogden, 9 Wheat., U.S., 1, 209, 6 L.Ed. 23; Southern R. Co. v. King, 217 U.S. 524, 531, 30 S.Ct. 594, 54 L.Ed. 868; United States Express Co. v. Minnesota, 223 U.S. 335, 342, 32 S.Ct. 211, 56 L.Ed. 459; Pennsylvania Gas Co. v. Public Service Comm., 252 U.S. 23, 29, 40 S.Ct. 279, 64 L.Ed. 434. See also, Sholley, The Negative Implications of the Commerce Clause, 3 U. of Chi.L.Rev. 556, 3 Selected Essays on Const. Law 933.
[16] See Corwin, Congress's Power to Prohibit Commerce: A Crucial Constitutional Issue, 18 Corn.L.Q. 477.
[17] Capital Traction Co. v. Hof, 174 U. S. 1, 5, 19 S.Ct. 580, 43 L.Ed. 873; Sims v. Rives, 66 App.D.C. 24, 84 F.2d 871, certiorari denied, 298 U.S. 682, 56 S. Ct. 960, 80 L.Ed. 1402.
[18] Gibbons v. District of Columbia, 116 U.S. 404, 407, 6 S.Ct. 427, 429, 29 L.Ed. 680.
[19] O'Donoghue v. United States, 289 U.S. 516, 539, 53 S.Ct. 740, 77 L.Ed. 1356; Washington Loan & Trust Co. v. Allman, 63 App.D.C. 116, 118, 70 F.2d 282, 284, certiorari denied, 292 U.S. 649, 54 S.Ct. 859, 78 L.Ed. 1499.
[20] See O'Donoghue v. United States, 289 U.S. 516, 539, 544-545, 53 S.Ct. 740, 77 L.Ed. 1356. See also, Inter-Island Steam Navigation Co. v. Hawaii, 305 U.S. 306, 314, 59 S.Ct. 202, 83 L. Ed. 189.
[21] Clark Distilling Co. v. Western Maryland R. Co., 242 U.S. 311, 327, 37 S.Ct. 180, 61 L.Ed. 326, L.R.A.1917B, 1218, Ann.Cas.1917B, 845.
[22] Currin v. Wallace, 306 U.S. 1, 14, 59 S.Ct. 379, 386, 83 L.Ed. 441. See Inter-Island Steam Navigation Co. v. Hawaii, 305 U.S. 306, 59 S.Ct. 202, 83 L.Ed. 189; United States ex rel. Attorney General v. Delaware & Hudson Co., 213 U.S. 366, 416-417, 29 S.Ct. 527, 53 L.Ed. 836; District of Columbia v. Brooke, 214 U.S. 138, 149, 29 S.Ct. 560, 53 L.Ed. 941.
[23] Inter-Island Steam Navigation Co. v. Hawaii, 305 U.S. 306, 314, 59 S.Ct. 202, 83 L.Ed. 189; Jefferson v. District of Columbia, 40 App.D.C. 381, 383-384; Sablowsky v. United States, 3 Cir., 101 F.2d 183, 188.
[24] Lack of power in the Continental Congress to regulate commerce permitted "a perpetual course of retaliatory legislation" between neighboring states "tending to the common ruin * * * daily increasing the mass of disaffection, until it became obvious, that the dangers of immediate warfare between some of the States was imminent * * *." Story, Constitution (1840) § 33. "This was the leading cause of abandoning the Confederation and forming the Constitution,  more than all other causes it led to the result * * *." Passenger Cases, 7 How., U.S., 283, 445, 12 L.Ed. 702. "If there was any one object riding over every other in the adoption of the constitution, it was to keep the commercial intercourse among the states free from all invidious and partial restraints." Opinion of Justice Johnson, in Gibbons v. Ogden, 9 Wheat., U.S., 1, 231, 6 L.Ed. 23. See also, Warren, The Making of the Constitution (1928) 567-568; Stern, That Commerce Which Concerns More States Than One, 47 Harv.L.Rev. 1335, 1344 et seq.; The Federalist, Nos. VII, XLII; 1 Story, Commentaries on the Constitution, 4th Ed. by Cooley, 1873, §§ 259, 260; 2 id. § 1057; 12 State Government (March 1939) 41-60; Prentice and Egan, The Commerce Clause of the Federal Constitution (1898) 187-196; Bowman v. Chicago & Northwestern R. Co., 125 U. S. 465, 481, 8 S.Ct. 689, 1062, 31 L. Ed. 700; Baldwin v. G. A. F. Seelig, Inc., 294 U.S. 511, 522, 55 S.Ct. 497, 79 L.Ed. 1032, 101 A.L.R. 55; Western Live Stock v. Bureau of Revenue, 303 U.S. 250, 256, 58 S.Ct. 546, 82 L.Ed. 823, 115 A.L.R. 944; District of Columbia v. Mt. Vernon Seminary, 69 App.D. C. 251, 100 F.2d 116. Cf. Note, 7 Geo. Wash.L.Rev. 402 (21st amend.).
[25] See Gant v. Oklahoma City, 289 U. S. 98, 102, 53 S.Ct. 530, 77 L.Ed. 1058; Standard Oil Co. v. Marysville, 279 U. S. 582, 584, 49 S.Ct. 430, 73 L.Ed. 856; South Carolina State Highway Dept. v. Barnwell Brothers, Inc., 303 U.S. 177, 190, 191, 58 S.Ct. 510, 82 L.Ed. 734; West Coast Hotel Co. v. Parrish, 300 U.S. 379, 398, 57 S.Ct. 578, 81 L.Ed. 703, 108 A.L.R. 1330; Nebbia v. New York, 291 U.S. 502, 525, 54 S.Ct. 505, 78 L.Ed. 940, 89 A.L.R. 1469; Helvering v. Davis, 301 U.S. 619, 640, 57 S.Ct. 904, 81 L.Ed. 1307, 109 A.L.R. 1319; United States v. Jacobs, 306 U.S. 363, 371, 59 S.Ct. 551, 83 L.Ed. 763.
[26] 50 Stat. 688, 690.
[27] Heiner v. Donnan, 285 U.S. 312, 326, 52 S.Ct. 358, 361, 76 L.Ed. 772. See also, Brushaber v. Union Pacific R. Co., 240 U.S. 1, 24, 25, 36 S.Ct. 236, 60 L.Ed. 493, L.R.A.1917D, 414, Ann.Cas. 1917B, 713, and Stimson, Retroactive Application of Law  A Problem in Constitutional Law, 38 Mich.L.Rev. 30.
[28] Welch v. Henry, 305 U.S. 134, 146-147, 59 S.Ct. 121, 125, 83 L.Ed. 87. See Billings v. United States, 232 U.S. 261, 282, 34 S.Ct. 421, 58 L.Ed. 596; Milliken v. United States, 283 U.S. 15, 21, 51 S.Ct. 324, 75 L.Ed. 809, and cases there cited; Nichols v. Coolidge, 274 U.S. 531, 47 S.Ct. 710, 71 L.Ed. 1184, 52 A.L.R. 1081; Blodgett v. Holden, 275 U.S. 142, 276 U.S. 594, 48 S.Ct. 105, 72 L.Ed. 206; Untermyer v. Anderson, 276 U.S. 440, 48 S.Ct. 353, 72 L.Ed. 645, with which compare United States v. Hudson, 299 U.S. 498, 57 S.Ct. 309, 81 L.Ed. 370. See generally, Ballard, Retroactive Federal Taxation, 48 Harv. L.Rev. 592. See also, dissenting opinion of Brandeis, J., in Untermyer v. Anderson, supra, 276 U.S. at page 446, 48 S.Ct. 353, 72 L.Ed. 645.
[29] 274 U.S. 531, 47 S.Ct. 710, 71 L. Ed. 1184, 52 A.L.R. 1081.
[30] 276 U.S. 440, 445, 48 S.Ct. 353, 72 L.Ed. 645.
[31] 275 U.S. 142, 147, 276 U.S. 594, 48 S.Ct. 105, 72 L.Ed. 206. Statutes purporting to be assertions of the federal taxing power have been held arbitrary and invalid on grounds other than that of retroactivity. Hence Congress, for the purpose of levying a death tax, cannot create a conclusive presumption that all transfers of property made within two years of death of the transferor were made in contemplation of death. Heiner v. Donnan, 285 U.S. 312, 322-326, 52 S.Ct. 358, 76 L.Ed. 772; Handy v. Delaware Trust Co., 285 U.S. 352, 52 S.Ct. 371, 76 L.Ed. 793 (arbitrary and capricious). Cf. Schlesinger v. Wisconsin, 270 U.S. 230, 46 S.Ct. 260, 70 L.Ed. 557, 43 A.L.R. 1224; (holding state statute containing similar provisions violative of the Fourteenth Amendment). Similarly, the courts will not sustain as expressions of the taxing power statutes which clearly disclose a purpose, not of raising revenue, but of regulating some activity beyond the legislative power; the levy of the tax being merely a penalty to compel compliance. Bailey v. Drexel Furniture Co., 259 U.S. 20, 39, 42 S.Ct. 449, 66 L.Ed. 817, 21 A.L.R. 1432 (attempt to regulate employment of child labor in local industry and commerce); Hill v. Wallace, 259 U.S. 44, 42 S.Ct. 453, 66 L.Ed. 822 (attempt to regulate conduct of business of local boards of trade); Carter v. Carter Coal Co., 298 U.S. 238, 289, 56 S.Ct. 855, 80 L.Ed. 1160 (regulation of bituminous coal industry); United States v. Butler, 297 U.S. 1, 70, 56 S.Ct. 312, 80 L.Ed. 477, 102 A.L.R. 914 (regulation of agricultural production); Linder v. United States, 268 U.S. 5, 17-18, 45 S.Ct. 446, 69 L.Ed. 819, 39 A.L.R. 229 (regulation of the practice of a profession). Cf. United States v. Doremus, 249 U.S. 86, 39 S.Ct. 214, 63 L.Ed. 493, and Nigro v. United States, 276 U.S. 332, 48 S.Ct. 388, 72 L.Ed. 600 (both sustaining the narcotics law as a revenue measure); McCray v. United States, 195 U.S. 27, 24 S.Ct. 769, 49 L.Ed. 78, 1 Ann.Cas. 561 (sustaining a tax of ten cents per pound on oleomargarine); and Sonzinsky v. United States, 300 U.S. 506, 57 S.Ct. 554, 81 L.Ed. 772 (upholding the validity of a license tax on dealers in firearms). Nor can a taxing statute withstand constitutional challenge if, in substance and application, its real purpose is to impose a penalty for the violation of a state law, and, thus, beyond the limits of federal power. United States v. Constantine, 296 U.S. 287, 56 S.Ct. 223, 80 L.Ed. 233. See United States v. La Franca, 282 U.S. 568, 572, 51 S.Ct. 278, 75 L.Ed. 551.
[32] Sonzinsky v. United States, 300 U. S. 506, 513, 57 S.Ct. 554, 556, 81 L.Ed. 772. See Veazie Bank v. Fenno, 8 Wall., U.S., 533, 548, 19 L.Ed. 482.
[33] See Security Savings & Commercial Bank v. District of Columbia, 51 App. D.C. 316, 279 F. 185; Spreckels Sugar Refining Co. v. McClain, 192 U.S. 397, 411, 24 S.Ct. 376, 48 L.Ed. 496; Baltic Mining Co. v. Massachusetts, 231 U.S. 68, 83, 34 S.Ct. 15, 58 L.Ed. 127; Flint v. Stone Tracy Co., 220 U.S. 107, 146, 150, 31 S.Ct. 342, 55 L.Ed. 389, Ann. Cas.1912B, 1312; United States v. Whitridge, 231 U.S. 144, 34 S.Ct. 24, 58 L.Ed. 159.
[34] See Home Indemnity Co. v. Missouri, 8 Cir., 78 F.2d 391, 394; Reynolds v. United States, 292 U.S. 443, 449, 54 S.Ct. 800, 78 L.Ed. 1353; Lewis v. Fidelity & Deposit Co., 292 U.S. 559, 571, 54 S.Ct. 848, 78 L.Ed. 1425, 92 A. L.R. 794; Cox v. Hart, 260 U.S. 427, 435, 43 S.Ct. 154, 67 L.Ed. 332; Great Northern R. Co. v. Sutherland, 273 U. S. 182, 192, 47 S.Ct. 315, 71 L.Ed. 596; United States v. Bradley, 7 Cir., 83 F. 2d 483.
[35] Cox v. Hart, 260 U.S. 427, 434, 43 S.Ct. 154, 67 L.Ed. 332; Big Diamond Mills Co. v. United States, 8 Cir., 51 F. 2d 721, 726. See generally, Smead, The Rule Against Retroactive Legislation: A Basic Principle of Jurisprudence, 20 Minn.L.Rev. 775, 778 et seq.
[36] Home Indemnity Co. v. Missouri, 8 Cir., 78 F.2d 391, 394. See also, United States v. Heth, 3 Cranch, U.S., 399, 413, 2 L.Ed. 479; Union Pacific R. Co. v. Laramie Stock Yards Co., 231 U.S. 190, 34 S.Ct. 101, 58 L.Ed. 179; Jones v. Fidelity & Columbia Trust Co., 6 Cir., 73 F.2d 446.
[37] Shwab v. Doyle, 258 U.S. 529, 535, 42 S.Ct. 391, 66 L.Ed. 747, 26 A.L.R. 1454.
[38] Story, J., in Society for Propagation of the Gospel v. Wheeler, Fed.Cas. No. 13,156, 2 Gall. 105, 139. See also, Sturges v. Carter, 114 U.S. 511, 519, 5 S.Ct. 1014, 29 L.Ed. 240; 2 Cooley, Taxation, 4th Ed. 1924, § 513; Gray, Limitations of Taxing Powers, 1906, § 1828: "* * * laws which decree consequences or create liabilities, arising out of facts which existed or transactions which took place before the enactment of the laws; and which consequences or liabilities did not by law exist with respect to such facts or transactions, at the times the facts existed or the transactions took place."
[39] See Locke v. New Orleans, 4 Wall., U.S., 172, 173, 18 L.Ed. 334. See also, American Mfg. Co. v. St. Louis, 250 U. S. 459, 460, 464, 39 S.Ct. 522, 63 L.Ed. 1084; Bass, Ratcliff & Gretton v. State Tax Comm., 266 U.S. 271, 280, 284, 45 S.Ct. 82, 69 L.Ed. 282.
[40] 50 Stat. 688, 690.
[41] 282 U.S. 379, 388, 51 S.Ct. 170, 75 L.Ed. 400, 71 A.L.R. 1226.
[41a] Regulations for The Administration and Enforcement of Title VI  Tax on Privilege of Doing Business of The District of Columbia Revenue Act of 1937: Section 3, Effective Date. "Any person engaged in business in the District of Columbia on August 17, 1937, shall be subject to the provisions of said Title and shall be required to pay the tax provided in said Title without any deduction (except an exemption of $2,000) or proration, notwithstanding such person shall not have obtained a license, or shall have ceased to engage in business in the District of Columbia at any time during the period from August 17, 1937, to June 30, 1938, unless exempted by the provisions of said Title or these regulations. Any person who was engaged in business in the District of Columbia on August 17, 1937, but who shall cease to engage in such business prior to sixty days thereafter, shall not be required to obtain a license. Persons commencing to engage in business after August 17, 1937, will not be required to pay any tax, but will be required to obtain a license."
[42] Macallen Co. v. Massachusetts, 279 U.S. 620, 628, 49 S.Ct. 432, 434, 73 L. Ed. 874, 65 A.L.R. 866. Stimson, Retroactive Application of Law  A Problem in Constitutional Law, 38 Mich.L. Rev. 30, 37-38: "The common characteristic of the cases holding the retroactive application of a statute contrary to due process of law is the element of surprise. A person who has changed his position, omitted to change it, or made commitments in reliance upon the law in force at the time is suddenly confronted with a change in the law applicable to his prior conduct, resulting in a liability or loss of investment which he has no opportunity to anticipate and avoid. On the other hand, in the cases holding the retroactive application of a statute consistent with due process of law, the element of surprise is lacking. There has been no change of position, omission to change or commitment in reliance upon the law in force at the time."
[43] Lewis v. Fidelity & Deposit Co., 292 U.S. 559, 571, 54 S.Ct. 848, 853, 78 L.Ed. 1425, 92 A.L.R. 794; United States v. Jacobs, 306 U.S. 363, 367, 59 S.Ct. 551, 83 L.Ed. 763; Home Indemnity Co. v. Missouri, 8 Cir., 78 F.2d 391, 394.
[43a] 266 U.S. 271, 45 S.Ct. 82, 69 L.Ed. 282.
[43b] 250 U.S. 459, 39 S.Ct. 522, 63 L. Ed. 1084.
[44] 50 Stat. 688, 690.
[45] Stewart Dry Goods Co. v. Lewis, 294 U.S. 550, 554, 55 S.Ct. 525, 79 L.Ed. 1054; Quaker City Cab Co. v. Pennsylvania, 277 U.S. 389, 48 S.Ct. 553, 72 L. Ed. 927; General American Tank Car Corp. v. Day, 270 U.S. 367, 46 S.Ct. 234, 70 L.Ed. 635; F. S. Royster Guano Co. v. Virginia, 253 U.S. 412, 40 S.Ct. 560, 64 L.Ed. 989.
[46] 22 App.D.C. 68.
[47] Wight v. Davidson, 181 U.S. 371, 384, 21 S.Ct. 616, 621, 45 L.Ed. 900: "It will, therefore, be perceived that there the court below and this court were dealing with a question arising under the Fourteenth Amendment of the Constitution of the United States, which, in terms, operates only to control action of the states, and does not purport to extend to authority exercised by the government of the United States.

"In the present case is involved the constitutionality of an act of Congress regulating assessments on property in the District of Columbia, and in respect to which the jurisdiction of Congress, in matters municipal as well as political, is exclusive, and not controlled by the provisions of the Fourteenth Amendment. No doubt, in the exercise of such legislative powers, Congress is subject to the provisions of the Fifth Amendment to the Constitution of the United States, which provide, among other things, that no person shall be deprived of life, liberty or property without due process of law, nor shall private property be taken for public use without just compensation. But it by no means necessarily follows that a long and consistent construction put upon the Fifth Amendment, and maintaining the validity of the acts of Congress relating to public improvements within the District of Columbia, is to be deemed overruled by a decision concerning the operation of the Fourteenth Amendment as controlling state legislation." [Italics supplied]
See Lawrence v. Wardell, 9 Cir., 273 F. 405, 408, holding that congressional exactions levied under the power to govern the territories need not be uniform as required by the grant of the general taxing power.
[48] Moses v. United States, 16 App.D. C. 428, 434, 50 L.R.A. 532: "In a State, the citizen, in addition to the safeguards of its own constitution, is under the special protection of the Fourteenth Amendment; in the District of Columbia (in respect of the right here involved) he is under that of the Fifth."
[49] See Truax v. Corrigan, 257 U.S. 312, 332, 42 S.Ct. 124, 129, 66 L.Ed. 254, 27 A.L.R. 375: "The due process clause, brought down from Magna Charta was found in the early state constitutions and later in the Fifth Amendment to the Federal Constitution as a limitation upon the executive, legislative and judicial powers of the Federal Government, while the equality clause does not appear in the Fifth Amendment and so does not apply to congressional legislation. * * * It [due process], of course, tends to secure equality of law in the sense that it makes a required minimum of protection for every one's right of life, liberty and property, which the Congress or the legislature may not withhold. Our whole system of law is predicated on the general fundamental principle of equality of application of the law. `All men are equal before the law,' `This is a government of laws and not of men,' `No man is above the law,' are all maxims showing the spirit in which legislatures, executives and courts are expected to make, execute and apply laws. But the framers and adopters of this amendment were not content to depend on a mere minimum secured by the due process clause, or upon the spirit of equality which might not be insisted on by local public opinion." [Italics supplied]
[50] Steward Machine Co. v. Davis, 301 U.S. 548, 584, 57 S.Ct. 883, 81 L.Ed. 1279, 109 A.L.R. 1293.
[51] See The Federalist, No. XLIII: "The indispensable necessity of complete authority at the seat of government, carries its own evidence with it. It is a power exercised by every legislature of the union, I might say of the world, by virtue of its general supremacy. Without it, not only the public authority might be insulted, and its proceedings be interrupted, with impunity; but a dependence of the members of the general government, on the state, comprehending the seat of the government, for protection in the exercise of their duty, might bring on the national councils an imputation of awe or influence, equally dishonorable to the government, and dissatisfactory to the other members of the confederacy. This consideration has the more weight, as the gradual accumulation of public improvements at the stationary residence of the government, would be both too great a public pledge to be left in the hands of a single state; and would create so many obstacles to a removal of the government, as still further to abridge its necessary independence. The extent of this federal district, is sufficiently circumscribed, to satisfy every jealousy of an opposite nature. And as it is to be appropriated to this use, with the consent of the state ceding it; as the state will no doubt provide in the compact for the rights, and the consent of the citizens inhabiting it; as the inhabitants will find sufficient inducements of interest, to become willing parties to the cession; as they will have had their voice in the election of the government, which is to exercise authority over them; as a municipal legislature for local purposes, derived from their own suffrages, will of course be allowed them; and as the authority of the legislature of the state, and of the inhabitants of the ceded part of it, to concur in the cession, will be derived from the whole people of the state, in their adoption of the constitution, every imaginable objection seems to be obviated."

See also, 2 Story, Commentaries on the Constitution, 4th Ed. by Cooley, 1873, § 1219: "* * * It is not improbable, that an occurrence, at the very close of the revolutionary war, had a great effect in introducing this provision [i. e., the clause establishing a seat of government] into the Constitution. At the period alluded to, the Congress, then sitting at Philadelphia, was surrounded and insulted by a small, but insolent body of mutineers of the continental army. Congress applied to the executive authority of Pennsylvania for defence; but, under the ill-conceived constitution of the State at that time, the executive power was vested in a council consisting of thirteen members; and they possessed or exhibited so little energy, and such apparent intimidation, that Congress indignantly removed to New Jersey, whose inhabitants welcomed them with promises of defending them. Congress remained for some time at Princeton without being again insulted, till, for the sake of greater convenience, they adjourned to Annapolis. The general dissatisfaction with the proceedings of Pennsylvania, and the degrading spectacle of a fugitive Congress, were sufficiently striking to produce this remedy."
[52] 22 App.D.C. 68.
[53] 66 App.D.C. 24, 31, 84 F.2d 871, 878, certiorari denied, 298 U.S. 682, 56 S.Ct. 960, 80 L.Ed. 1402.
[54] 65 App.D.C. 330, 332, 83 F.2d 587, 589, reversed, 299 U.S. 123, 57 S.Ct. 177, 81 L.Ed. 78.
[55] Parsons v. District of Columbia, 170 U. S. 45, 56, 18 S.Ct. 521, 42 L. Ed. 943; Gibbons v. District of Columbia, 116 U.S. 404, 407, 6 S.Ct. 427, 29 L.Ed. 680; Loughborough v. Blake, 5 Wheat., U.S., 317, 5 L.Ed. 98.
[56] Steward Machine Co. v. Davis, 301 U.S. 548, 584, 57 S.Ct. 883, 81 L.Ed. 1279, 109 A.L.R. 1293; LaBelle Iron Works v. United States, 256 U.S. 377, 392, 41 S.Ct. 528, 65 L.Ed. 998; Currin v. Wallace, 306 U.S. 1, 14, 59 S.Ct. 379, 83 L.Ed. 441.
[57] Steward Machine Co. v. Davis, 301 U.S. 548, 585, 57 S.Ct. 883, 890, 81 L. Ed. 1279, 109 A.L.R. 1293.
[58] District of Columbia v. Brooke, 214 U.S. 138, 150, 29 S.Ct. 560, 563, 53 L. Ed. 941: "However, the question of the power of Congress, broadly considered, to discriminate in its legislation, is not necessary to decide, for, whether such power is expressly or impliedly prohibited, the prohibition cannot be stricter or more extensive than the 14th Amendment is upon the States."
[59] District of Columbia v. Brooke, 214 U.S. 138, 150, 29 S.Ct. 560, 563, 53 L. Ed. 941. See also, Flint v. Stone Tracy Co., 220 U.S. 107, 158 et seq., 31 S.Ct. 342, 55 L.Ed. 389, Ann.Cas.1912B, 1312; Carmichael v. Southern Coal & Coke Co., 301 U.S. 495, 509, 57 S.Ct. 868, 81 L.Ed. 1245, 109 A.L.R. 1327; Ohio Oil Co. v. Conway, 281 U.S. 146, 159, 50 S. Ct. 310, 74 L.Ed. 775; New York Rapid Transit Corp. v. New York, 303 U.S. 573, 578, 58 S.Ct. 721, 724, 82 L.Ed. 1024: "`The rule of equality permits many practical inequalities.'"
[60] Steward Machine Co. v. Davis, 301 U.S. 548, 584, 57 S.Ct. 883, 889, 81 L. Ed. 1279, 109 A.L.R. 1293: "The Fifth Amendment unlike the Fourteenth has no equal protection clause. LaBelle Iron Works v. United States, supra; Brushaber v. Union Pacific R. Co., supra, p. 24, [240 U.S. 1, at page 24, 36 S. Ct. 236, 60 L.Ed. 493, L.R.A.1917D, 414, Ann.Cas.1917B, 713]. But even the states, though subject to such a clause, are not confined to a formula of rigid uniformity in framing measures of taxation. Swiss Oil Corp. v. Shanks, 273 U. S. 407, 413 [47 S.Ct. 393, 395, 71 L.Ed. 709]. They may tax some kinds of property at one rate, and others at another, and exempt others altogether. Bell's Gap R. Co. v. Pennsylvania, 134 U.S. 232 [10 S.Ct. 533, 33 L.Ed. 892]; Stebbins v. Riley, 268 U.S. 137, 142 [45 S. Ct. 424, 426, 69 L.Ed. 884, 44 A.L.R. 1454]; Ohio Oil Co. v. Conway, 281 U.S. 146, 150 [50 S.Ct. 310, 74 L.Ed. 775]. They may lay an excise on the operations of a particular kind of business, and exempt some other kind of business closely akin thereto. Quong Wing v. Kirkendall, 223 U.S. 59, 62, [32 S.Ct. 192, 56 L.Ed. 350]; American Sugar Refining Co. v. Louisiana, 179 U.S. 89, 94, [21 S.Ct. 43, 45 L.Ed. 102]; Armour Packing Co. v. Lacy, 200 U.S. 226, 235 [26 S.Ct. 232, 50 L.Ed. 451]; Brown-Forman Co. v. Kentucky, 217 U.S. 563, 573 [30 S.Ct. 578, 54 L.Ed. 883]; Heisler v. Thomas Colliery Co., 260 U.S. 245, 255 [43 S.Ct. 83, 84, 67 L.Ed. 231]; State Board of Tax Com'rs v. Jackson, 283 U. S. 527, 537, 538 [51 S.Ct. 540, 543, 75 L.Ed. 1248, 73 A.L.R. 1464, 75 A.L.R. 1536]. If this latitude of judgment is lawful for the states, it is lawful, a fortiori, in legislation by the Congress, which is subject to restraints less narrow and confining. Quong Wing v. Kirkendall, supra." See also, Barclay & Co., Inc. v. Edwards, 267 U.S. 442, 450, 45 S.Ct. 348, 69 L.Ed. 703; Evans v. Gore, 253 U.S. 245, 256, 40 S.Ct. 550, 64 L.Ed. 887, 11 A.L.R. 519.
[61] See Green v. United States, 25 App. D.C. 549, 553; Rowland v. Dolby & Statton, 100 Md. 272, 59 A. 666, 3 Ann. Cas. 643; Sams v. Arthur, 135 S.C. 123, 133 S.E. 205.
[62] Taylor v. Fram, 2 Cir., 252 F. 465; Coverdell v. Erickson, 39 N.D. 579, 168 N.W. 367. See Hansen Service, Inc. v. Lunn, 155 Wash. 182, 192, 283 P. 695, 698-699.
[63] See Singer Sewing Mach. Co. v. Brickell, 233 U.S. 304, 315, 34 S.Ct. 493, 497, 58 L.Ed. 974: "So far as the Fourteenth Amendment is concerned, the argument is confined to the `equal protection' clause. It is said there is no sufficient ground for a distinction, with respect to taxing the occupation, between the business of selling sewing machines from a regularly established store and the business of selling them from a delivery wagon. But there is an evident difference, in the mode of doing business, between the local tradesman and the itinerant dealer, and we are unable to say that the distinction made between them for purposes of taxation is arbitrarily made. In such matters the states necessarily enjoy a wide range of discretion, and it would require a clear case to justify the courts in striking down a law that is uniformly applicable to all persons pursuing a given occupation, on the ground that persons engaged in other occupations more or less like it ought to be similarly taxed. This is not such a case. Connolly v. Union Sewer Pipe Co., 184 U.S. 540, 559, 562 [22 S.Ct. 431, 46 L.Ed. 679, 689, 690]; Cook v. Marshall County, 196 U.S. 261, 274 [25 S.Ct. 233, 49 L.Ed. 471, 476]; Armour Packing Co. v. Lacy, 200 U.S. 226, 235 [26 S.Ct. 232, 50 L.Ed. 451, 456]; Southwestern Oil Co. v. Texas, 217 U.S. 114, 121 [30 S.Ct. 496, 54 L.Ed. 688, 692]."

See also, Rast v. Van Deman & Lewis Co., 240 U.S. 342, 357, 36 S.Ct. 370, 374, 60 L.Ed. 679, L.R.A.1917A, 421, Ann.Cas.1917B, 455: "The ground of discrimination, simply and separated from the other attacks upon the statute, does not present much difficulty. The difference between a business where coupons are used, even regarding their use as a means of advertising, and a business where they are not used, is pronounced. Complainants are at pains to display it. The legislation which regards the difference is not arbitrary within the rulings of the cases. It is established that a distinction in legislation is not arbitrary, if any state of facts reasonably can be conceived that would sustain it, and the existence of that state of facts at the time the law was enacted must be assumed. Lindsley v. Natural Carbonic Gas Co., 220 U.S. 61, 78 [31 S.Ct. 337, 55 L.Ed. 369, Ann.Cas. 1912C, 160]. It makes no difference that the facts may be disputed or their effect opposed by argument and opinion of serious strength. It is not within the competency of the courts to arbitrate in such contrariety. Chicago, Burlington & Quincy R. R. v. McGuire, 219 U. S. 549 [31 S.Ct. 259, 55 L.Ed. 328]; German Alliance Ins. Co. v. Kansas, 233 U. S. 389, 413, 414 [34 S.Ct. 612, 58 L.Ed. 1011, 1022, 1023, L.R.A.1915C, 1189]; Price v. Illinois, 238 U.S. 446, 452 [35 S. Ct. 892, 59 L.Ed. 1400, 1405]."
[64] Lappin v. District of Columbia, 22 App.D.C. 68; Gulf, C. & S. F. R. Co. v. Ellis, 165 U.S. 150, 155, 17 S.Ct. 255, 41 L.Ed. 666.
[65] Clark v. Paul Gray, Inc., 306 U.S. 583, 594, 59 S.Ct. 744, 83 L.Ed. 1001.
[66] State Board of Tax Commissioners of Indiana v. Jackson, 283 U.S. 527, 537-538, 51 S.Ct. 540, 543, 75 L.Ed. 1248, 73 A.L.R. 1464, 75 A.L.R. 1536, and see cases digested on succeeding pages of that opinion. See also, New York Rapid Transit Corp. v. City of New York, 303 U.S. 573, 578, 58 S.Ct. 721, 82 L.Ed. 1024; Metropolitan Casualty Ins. Co. v. Brownell, 294 U.S. 580, 584, 55 S.Ct. 538, 79 L.Ed. 1070; Clark v. Paul Gray, Inc., 306 U.S. 583, 594, 59 S.Ct. 744, 83 L.Ed. 1001. See generally, Sholley, Equal Protection in Tax Legislation, 20 Va.L.Rev. 229, 1 Selected Essays on Const.Law (Book 5) 39, 50.
[66a] 294 U.S. 550, 55 S.Ct. 525, 79 L. Ed. 1054.
[66b] 277 U.S. 389, 48 S.Ct. 553, 72 L.Ed. 927.
[67] See Flint v. Stone Tracy Co., 220 U.S. 107, 31 S.Ct. 342, 55 L.Ed. 389, Ann.Cas.1912B, 1312; Great Atlantic & Pacific Tea Co. v. Grosjean, 301 U.S. 412, 419, 57 S.Ct. 772, 81 L.Ed. 1193, 112 A.L.R. 293; Louis K. Liggett Co. v. Lee, 288 U.S. 517, 532, 53 S.Ct. 481, 77 L.Ed. 929, 85 A.L.R. 699, with which compare Concordia Fire Ins. Co. v. Illinois, 292 U.S. 535, 54 S.Ct. 830, 78 L. Ed. 1411.